IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

---

### WESTERN DISTRICT—PITTSBURG, 1875.

---

### Thorne *et al.* *versus* Travellers Insurance Co.

1. A foreign insurance company can transact business in Pennsylvania only under the system established by Act of April 11th 1868.

2. Thorne was appointed agent of a foreign insurance company; the conditions required by the Act of 1868 not having been complied with, he gave bond with sureties to the company, conditioned for paying over moneys received by him, &c.; in suit by the company against him and his sureties for his not paying over, *Held*, that the plaintiffs could not sustain the suit.

3. The legislature may prescribe the conditions under which foreign corporations may do business in the state, and the mode of appointing and qualifying agents.

4. An action on a transaction prohibited by a statute cannot be maintained, although a penalty be imposed and the transaction be not declared void.

5. Courts will not aid a party in an action grounded on an immoral or illegal act.

6. The Act of 1868 requires a foreign insurance company to appoint an agent in the state, who may appoint subordinate agents and certify their names and residences to the auditor-general, such agents not to act without a license from the auditor-general. Thorne was appointed in 1866, and continued to act until November 1870, having received no license. The certificate of the auditor-general in 1871, that Thorne had power to act in 1870, was not conclusive evidence of his agency in that year.

7. The insurance commissioner, in whose office were all the insurance records, in 1874 certified a paper found in his office to be a copy of a " list of agents" of the plaintiffs for 1870, amongst whom was Thorne; the list having been certified by the general agent to the insurance department April 21st 1871. Parol evidence that the list was not there on the 15th of April 1871, was admissible to show that Thorne had not been certified whilst he was acting as agent and that his name had been surreptitiously placed in the office to deceive the auditor-general.

8. If a record be fraudulently made it may be impeached by parol.

9. The affidavit of claim specified items of the account against Thorne;

(15)

[Thorne *v.* Travellers Insurance Co.]

the defendants, in the affidavit of defence, "deny each item in said specification, and say that they do not owe the plaintiffs the sum or any part thereof." This put the burden of proof of the account on the plaintiffs, and the account could not be given in evidence without proof.

October — 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Allegheny county :* Of October and November Term 1874, No. 177.

This was an action of debt, brought January 30th 1873, by The Travellers Insurance Company of Hartford, Connecticut, against Robert Thorne, John Heath and Andrew F. Baum.

The plaintiffs were a life and accident insurance company, incorporated by the state of Connecticut; the suit was for the breach of the condition of a bond of defendants to plaintiffs, dated July 25th 1870, in the penal sum of $5000. The bond recited that Thorne had been appointed agent of the company for the western part of Pennsylvania, during the pleasure of the officers of the company, and that as such agent he would receive divers sums of money, chattels and other effects of the company, and would be bound to keep accurate accounts of such property and of his receipts and disbursements, and to deliver, account and pay over the same when demanded and directed, according to the instructions of the officers of the company.

The condition was that Thorne should promptly pay to the company the amounts received from time to time, either as premiums collected or advances made by the company for any purpose, and should perform all the duties as agent of the company, as directed according to their charter, by-laws, rules and regulations then existing or which might be adopted by the company during the time he should officiate as agent, and should deliver all the property which he might receive and hold as agent, to his successor or to such other person as the company or its authorized officers might direct.

The plaintiffs' affidavit of claim was that the defendants were indebted to them in the sum of $3877.21, the amount due for premiums and interest on policies issued by Thorne, as agent of plaintiffs, as stated in an annexed bill of particulars of the premiums and interest; with the names of the insured, and the number of the policies, which plaintiffs claimed to recover by virtue of the above-mentioned bond, &c.

The statement contained a great number of items of charges and also items of credit for commissions, showing the balance due from Thorne to be $3877.21, as set out in the affidavit.

The affidavit of defence was :—

1. That Thorne had not been appointed agent, in the form required by the laws of Pennsylvania relating to foreign insurance

[Thorne *v.* Travellers Insurance Co.]

companies, and never acted for plaintiffs as their legally authorized agent.

2. That before and at the time the persons named in the specifications were insured, the plaintiffs had not complied with the provisions of the several Acts of Assembly relating to foreign insurance companies, and did not appoint agents according to the laws of the Commonwealth.

3. That Thorne did not receive the sums of money mentioned in the plaintiffs' specification and not any part as the legally authorized agent of plaintiffs.

4. Defendants " deny each and every item contained in said specification, and say they do not owe the plaintiffs the sum or any part thereof."

5. That the conditions of the bond were fully complied with by Thorne ; that all moneys received by him for the plaintiffs, after the date of the bond, were paid to them, after such deduction as Thorne was entitled to; that the defendants could not be more specific on this point because the specification did not give the numbers nor dates of the policies on which the items were alleged to have been received by Thorne.

The Act of April 11th 1868, Pamph. L. 831, 1 Br. Purd. 796 *et seq.*, consolidating, &c., the laws of Pennsylvania in relation to foreign insurance companies, provides :—

Sect. 2. That any such * * * company, * * * desiring to transact business in this state, shall first appoint an agent or attorney resident in this state, on whom process can be served, and file in the office of the auditor-general * * * a certified copy of resolution of the board of directors, * * * appointing such attorney or agent, which appointment shall continue until another agent or attorney be substituted, and also a certified copy of the charter or other authority under which said company or association is organized. * * *

Sect. 5. That every such * * * company * * * shall, before issuing or agreeing to issue any policy, or transacting any business whatever in this Commonwealth, forward to the auditor-general the statement required by this act, together with a written application for a license to transact their said business in this state, signed by the agent appointed by such company ; and the said agent shall file a bond in five thousand dollars, with two sureties, residents of the county in which the principal business office of said agent is to be established, which shall be approved by the district attorney of said county, conditioned for the faithful discharge of all the duties enjoined upon him by the provisions of this act, and for the payment of all moneys received by him, or payable by him for the use of the Commonwealth ; which bond shall be acknowledged * * * and recorded in the office of the recorder of deeds of said county and deposited in the office of the

30 P. F. Smith—2

· [Thorne *v.* Travellers Insurance Co.]

auditor-general, and certified copies thereof, under the seal of the recorder, shall be as good evidence as the original would be in any action brought against such agent or his sureties on such bond.

Sect. 9. That the auditor-general shall have power to revoke and annul any license issued by him under the provisions of this act, when he shall be satisfied that the assets of said company or association have become impaired to the extent of more than thirty per centum thereof, or in case he shall ascertain that said license was originally obtained by fraud or misstatement, or for the misconduct of any agent. * * *

Sect. 10. That every agent shall have full power and authority to transact business for the company for which he is licensed in each and every county of this Commonwealth, either in person or by any subordinate agent * * * acting under his authority and direction, and he shall be immediately responsible to the Commonwealth for the tax on all premiums received in the state, whether the same are received by him directly or through his subordinate agents; and the said agent may from time to time appoint as many subordinate agents as he may deem proper, and certify the names and residences of the same to the auditor-general, who thereupon shall issue to each of said subordinate agents, upon payment of the usual fee of his office, a certificate showing that the company has complied with the requirements of this act, and that the agent thereof has full power and authority to transact business in any part of this Commonwealth, and that he has designated such person as his subordinate agent; and no person shall act as a subordinate agent until he has received such certificate.

Sect. 12. That any person receiving premiums or forwarding applications, or in any other way transacting business for any insurance company not incorporated by this state, without having received authority so to act for such company, agreeably to the provisions of this act, or in any other way violating the provisions of the same, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined five hundred dollars for each offence; * * * and any party doing business by receiving applications or forwarding policies to any person not duly authorized to act as agent, shall be fined in a like sum of five hundred dollars for each offence, and be prohibited from doing business in this state until such fine be fully paid.

Sect. 13. For the better enforcement of the provisions of this act, it shall be the duty of the district attorneys, in any of the counties of this Commonwealth, to enforce the provisions and requirements of the same, for which each and every district attorney is hereby empowered, * * * once in each and every year, to examine any license agent or agents transacting or carrying on business in the county for which said district attorney is elected, to

examine the books of all such agencies, so as to satisfy himself that such agent or agents have fulfilled the provisions and requirements of this act, and paid all taxes due the Commonwealth, and make report thereof once in each and every year to the auditor-general; * * * and it shall be the duty of the said district attorneys to enforce this act and its penalties against any such agents, persons, companies or associations as aforesaid, by suit or suits at law, in the name of the Commonwealth. * * *

The case was tried, April 30th 1874, before White, J.

1. Under objection and exception, the plaintiffs read the account appended to their affidavit of claim.

2. They then, under objection and exception, gave in evidence three certificates of the auditor-general, each dated January 28th 1871, viz. :—

" Whereas, the Travellers Insurance Company, located at Hartford, in the state of Connecticut, appointed and constituted William W. Allen their agent and complied with all the requirements of an Act, * * * approved the 11th day of April 1868. And whereas, license was granted to said agent, in conformity with the act aforesaid, empowering him to transact business for and in behalf of said company in each and every county of this Commonwealth, for and during the period from January 1st to December 31st 1869. And whereas, said agent has certified to me the appointment of Robert Thorne, of Pittsburg, as subordinate agent of said company :

" Now, therefore, I, John F. Hartranft, Auditor-General of the state of Pennsylvania, in accordance with the requirements of Act aforesaid, do hereby certify that Robert Thorne was duly appointed and authorized by the said William W. Allen, to transact business as the subordinate agent of the said company for and during the term for which the aforesaid agent was licensed."

The other certificates were precisely similar, except that they certified the appointment of Allen and Thorne as agents for. the years 1870 and 1871, respectively.

The plaintiffs then proved that papers produced were the monthly reports of Thorne made to the home office of plaintiffs, and that the reports of the life department were made up at the home office and sent to the agent for the purpose of having him send on the money.

3. They then offered severally the monthly accounts of the life department for the months of June, July and August 1870, and the monthly accounts of the accident department for the month of September 1870, and previous months.

The defendants objected to each offer; the offers were admitted, and several bills of exception sealed.

The accounts of the life department showed a balance of $1260.32 due by Thorne; the accounts of the accident department a balance of $1438.81 due by him.

[Thorne *v.* Travellers Insurance Co.]

The plaintiffs then rested.

4. The defendants called Thorne, and offered to prove by him and other witnesses that he never received from the plaintiffs, or from the auditor-general of the state of Pennsylvania, any appointment or license to act as agent for plaintiffs, and never received any notification that he had been appointed as agent for the said plaintiffs, for the purpose of showing that the plaintiffs had not complied with the law of this state prior to or at the date of the bond in suit.

The offer was rejected, and a bill of exceptions sealed.

5. Defendants then proposed to prove that plaintiffs did not comply with the requirements of the Act of April 11th 1868, prior or subsequent to the date of the bond in suit; and that Thorne, the alleged agent of plaintiffs, was not authorized or licensed by the auditor-general of the state of Pennsylvania to act as subordinate agent of plaintiffs, and that he never received from the auditor-general the certificate prescribed by the Act of 11th April 1868.

This was objected to by the plaintiffs.

The court permitted the defendants to show that Thorne never received a certificate from the auditor-general, rejected the remainder of the offer and sealed a bill of exceptions.

Thorne then testified that he never received from the auditor-general any certificate of his appointment as subordinate agent or license as such.

6. Defendants then proposed to prove that Thorne never knew that there was any certificate or authority issued to him as subordinate agent of said plaintiffs until alleged by plaintiffs on this trial, to show that he never was lawfully authorized as agent of plaintiffs.

This was objected to by plaintiffs, rejected by the court and a bill of exceptions sealed.

7. The defendants then offered to prove that he never received a certificate from the auditor-general to act as agent for the plaintiffs ; that being threatened with prosecution for violation of law, on or about April 15th 1871, he examined the records of the auditor-general's office; that at that time the record or papers on file of the plaintiffs did not contain the names of any subordinate agents in the state, nor anything to show that the plaintiffs had any agents in this state ; that after the plaintiffs gave in evidence the certificates of the auditor-general that the said plaintiffs had complied with the law, and appointed Thorne subordinate agent, he went to Harrisburg, and on Saturday last searched and caused to be searched the records of the insurance department, which, by virtue of the law of 1873, is now the custodian and has charge of the records, books and papers of the auditor-general's office, in relation to and touching all insurance business ; that he found in said department two papers containing a large number of names, which

[Thorne *v.* Travellers Insurance Co.]

papers purported to be lists of subordinate agents appointed by the said Travellers Insurance Company for the years of 1869 and 1870; that said papers purported to be made out and sworn on the 21st day of April 1871; that he had examined the papers of this company, on file in the auditor-general's office, on or about the 15th day of April 1871, and found no such papers as now appear in the office of the aforesaid insurance department, in relation to the appointment of subordinate agents.

The offer was objected to by plaintiffs, rejected by the court and a bill of exceptions sealed.

The defendants then gave in evidence the following papers:—

"List of agents who held the appointments of the 'Travellers Insurance Company,' to transact the business within the Commonwealth of Pennsylvania during the year 1869:—

| William W. Allen, | . | . | . | . | Philadelphia; |
| * | * | * | * | * | * * |
| Robert Thorne, | . | . | . | . | Pittsburg. |
| * | * | * | * | * | * * |

"I hereby certify the foregoing to be a true, complete and correct list of all agents appointed to transact business for the Travellers Insurance Company, within the Commonwealth of Pennsylvania, during the year 1869, according to the best of my knowledge and belief.

WM. W. ALLEN, General Agent and Att'y.
Philadelphia, Pa., April 21st 1871."

"Insurance Department of Pennsylvania,
Harrisburg, May 2d 1874.

"I hereby certify that I am Insurance Commissioner of Pennsylvania, appointed and commissioned in pursuance of an Act entitled 'An Act to establish an Insurance Department,' approved the 4th day of April, A. D. 1873, and that in accordance with the requirements of said act, the books, papers and records in the office of the Auditor-General, relating to the business of insurance, have been transferred to this department and are now in my charge and custody, and that the foregoing is a correct copy of a paper found among the records aforesaid and endorsed 'List of Agents of the Travellers Insurance Company, in the state of Pennsylvania, 1869.'

"In testimony whereof, I have hereunto set my hand and caused my official seal to be affixed the day and year aforesaid.

J. M. FORSTER, Insurance Commissioner."

"List of agents who held the appointments of the Travellers Insurance Company to transact its business within the Commonwealth of Pennsylvania, during the year 1870:—

| William W. Allen, | . | . | . | . | Philadelphia; |
| * | * | * | * | * | * * |
| Robert Thorne, | . | . | . | . | Pittsburg." |
| * | * | * | * | * | * * |

[Thorne *v.* Travellers Insurance Co.]

Attached to this paper is a certificate of W. W. Allen; also a certificate of J. M. Forster, Insurance Commissioner, precisely like those to the previous list, except that the agents are stated to be for the year 1870.

8. Defendants then proposed to prove that on or about the 15th day of April 1871, plaintiffs, by their secretary, Rodney Dennis, stated, that prior to that date the company had not complied with the Act of 11th April 1868; but that the company could make out the papers so that it would appear in the auditor-general's office that the company had complied with the law; that at that date the lists of agents sent to the auditor-general's office for the years 1869 and 1870, and contained in certified copies in evidence, were not made out and filed in said office.

This for the purpose of proving the company had not complied with the law, and had not the right to do business in this state.

This was objected to by plaintiffs, rejected by the court and a bill of exceptions sealed.

Defendants then gave in evidence an agreement, dated August 13th 1866, between the plaintiffs and Thorne, appointing him their agent.

The agreement stipulated that the plaintiffs should provide a suitable office in Pittsburg, pay certain expenses, &c.; Thorne to devote his entire time to the interests of the company in soliciting business, circulating its literature, &c., and performing such acts as came within the scope of a faithful soliciting and supervising agent; and providing for his compensation.

The territory over which Thorne was to exercise supervision comprised twenty-three counties in Western Pennsylvania.

Appended to the agreement was a writing signed by Thorne, and dated September 19th 1870, releasing to other agents his supervision of eleven of the twenty-three counties.

Thorne testified that he commenced in 1866 doing business for the plaintiffs under the agreement; that in January and September 1870, he had borrowed from the plaintiffs, by an agreement with their secretary, the money which had been received by him for premiums and which was then in his hands, the loan being about $2500; he prepared his account with the company, found the balance in his hands and retained it according to the agreement; all the money in the account was received prior to July 25th 1870, except an item of $137.30, received August 6th 1870. He settled with the secretary on the 5th of November 1870, being on the accident department, for all the money received by him beyond the loan and paid him $120, the balance then due the plaintiffs; that closed his business with the plaintiffs. This included all that the secretary claimed of him, except what was embraced in the loan. He had appointed twenty-five or thirty agents under him; he did business by sub-agents; sometimes hired them without consulting

the company; sometimes notified the secretary of their appointment; he sent some of their commissions to witness; sometimes sent them directly to the agents; witness' relation as agent was dissolved November 5th 1870. He gave other testimony for the purpose of showing that he was not indebted to the plaintiffs and generally to show that there was no liability of defendants on the bond.

The defendants rested.

The plaintiffs, in rebuttal, gave in evidence the license of the auditor-general to the plaintiffs, dated January 1st 1870, viz. :—

" Whereas, the Travellers Insurance Company of Hartford, Connecticut, have appointed William W. Allen their attorney, resident of this Commonwealth, on whom process of law can and may be served, and have, in all other respects, complied with the provisions of the Act, * * * approved the 11th day of April, A. D. 1868. And whereas, the said William W. Allen has applied in writing to the auditor-general of this state, for a license to transact business as the agent of the said company, in each and every county of this Commonwealth, and has complied with the provisions of the act aforesaid.

" I, therefore, by virtue 'of the authority vested in me by the act aforesaid, grant a license to the said Travellers Insurance Company, to carry on their business, by their agent aforesaid, in each and every county of this Commonwealth, for the period of one year from the date hereof."

R. Dennis, secretary of plaintiffs, testified that he had not agreed to lend Thorne the money in his hands due to the company. He further testified as to the state of the accounts between Thorne and plaintiffs, and in contradiction of Thorne's testimony.

There was testimony from other witnesses to the same effect.

The evidence then closed on both sides.

The following are points of the defendants and the answers :—

3. The three papers purporting to be certificates signed by the auditor-general, and dated June 28th 1871, are incompetent and insufficient evidence to prove that the plaintiff complied with the said Act of 11th April 1868, and there being no other evidence of this fact, the plaintiff cannot recover.

Answer : " Refused, because there is other evidence before the jury."

4. It was unlawful for the plaintiff to transact insurance business in this state by subordinate agents, not appointed and authorized agreeably to the provisions of the 10th sect. of said act; if Dr. Thorne was not appointed a subordinate agent in the mode therein prescribed when the plaintiff obtained the bond sued on, the bond is void and the plaintiff cannot recover.

Answer : " Refused. The bond of an agent may be given before, and in contemplation of his regular appointment."

[Thorne *v.* Travellers Insurance Co.]

5. There is no competent or sufficient evidence in the cause, that Dr. Thorne was ever appointed in the mode prescribed in the 10th sect. of said act, and no evidence that he ever received from the auditor-general the certificate of appointment required by the 10th sect. of said act. Therefore the plaintiff is not entitled to recover in this suit.

Answer: "Refused. There is sufficient evidence to show that he was duly appointed a subordinate agent by the insurance company. His failure to take out a license from the auditor-general is not sufficient defence in this action."

6. If the jury believe the uncontradicted testimony of Dr. Thorne, that he never received from the auditor-general a certificate of his appointment or authority to act as a subordinate agent of plaintiff, in pursuance of the 10th sect. of the Act of 11th of April 1868, and had no such certificate or authority when he executed the bond in the suit, the bond is void and the plaintiff cannot recover.

7. The certified copies of the list of subordinate agents for 1869 and 1870, filed by plaintiff in the auditor-general's office, on the 21st of April 1871, given in evidence by defendants, taken in connection with the uncontradicted evidence of Dr. Thorne, that he never received a certificate of appointment or other authority from the auditor-general, is conclusive evidence that he was not authorized to act as subordinate agent in the mode prescribed by law; and if the jury believe this evidence he was not lawfully authorized at the date of the bond sued on; and the bond is therefore void and the plaintiff cannot sustain this action.

16. It was unlawful for the plaintiff to do business in this state by subordinate agents, without first having such agents appointed in the mode prescribed by the 10th sect. of the Act of April 11th 1868. It was plaintiffs' duty, under this law, to see that Dr. Thorne was so appointed; and if the bond in suit was taken when Thorne had not the proper authority from the auditor-general, the bond is void, and plaintiffs cannot recover, although the company had complied with the requirements of the aforesaid act in all other respects.

17. The three papers purporting to be certificates of the auditor-general, dated June 28th 1871, the certified copies of the lists of agents, sworn to 21st April 1871, together with the testimony of Dr. Thorne, show that Thorne had no lawful authority to act as subordinate agent when the bond in suit was executed. The bond is therefore void, and the plaintiffs cannot recover.

The 6th, 7th, 16th and 17th points were refused without qualification.

The court charged:—

* * * "It is contended, that, as the plaintiffs are a foreign insurance company, and have not complied with the provisions of

[Thorne v. Travellers Insurance Co.]

the Act of Assembly of 11th April 1868, they could not legally do any business in this state, and can maintain no action relating to, or arising out of, their insurance business in the state. [But the plaintiffs have given in evidence the license issued by the auditor-general of the state, under the seal of his office, dated January 1st 1870, reciting that the plaintiffs have complied with the requirements of that act, and are duly authorized and licensed to do business in the state for the year 1870. That license, I instruct you, is conclusive evidence that the plaintiffs had a right to do business as an insurance company in this state during the year 1870.]

[" But the defendants further contend that Dr. Thorne never received from the auditor-general a license to act as subordinate agent for the year 1870, and he testifies that he never had such a license. The plaintiffs, however, have put in evidence the certificate of the auditor-general under the seal of his office, dated June 28th 1871, reciting that he was duly appointed and authorized to act as a subordinate agent for the year 1870. From these official documents, it would seem that the company had complied with all the requirements of the law, in reference to his appointment as a subordinate agent. He acted as such agent, in that capacity did business for the company, and received the money they now seek to recover from him. As such agent, he gave the bond in suit, reciting that he was their agent, and he and his bail signed that bond. One condition of the bond was that he 'shall well and truly perform all and singular the duties as agent of said company, as directed, according to the provisions of the charter, by-laws and regulations of said company.' One of his duties as agent was to take out his license from the auditor-general. If he failed to do so, it was not the fault of the company, but his own neglect of duty. After receiving the money on the faith of his agency and on the faith of that bond, neither he nor his sureties can resist payment of it, simply because he had neglected to take out his license. I therefore say to you that this is not sufficient ground of defence in this action."] * * *

The verdict was for the plaintiffs for $1874.08.

The defendants took a writ of error, and assigned, amongst others, the following errors :—

1. Admitting the evidence mentioned in the first bill of exceptions.

2. Admitting the evidence mentioned in the second bill of exceptions.

3. Admitting the evidence mentioned in the third bill of exceptions.

4. Rejecting the offer mentioned in the fourth bill of exceptions.

5. Rejecting the offer mentioned in the fifth bill of exceptions.

6. Rejecting the offer mentioned in the sixth bill of exceptions.

7. Rejecting the offer mentioned in the seventh bill of exceptions.

8. Rejecting the offer mentioned in the eighth bill of exceptions.

10, 11, 12, 13, 14, 18, 19. The answers to the defendants' 3d, 4th, 5th, 6th, 7th, 16th and 17th points.

21, 22. The parts of the charge in brackets.

*Wier & Gibson, A. M. Brown* and *S. A. Purviance*, for plaintiffs in error.—An action founded on the violation of law cannot be maintained: Maybin v. Coulon, 4 Dallas 298. The test is whether the plaintiffs require the aid of the illegal transaction to establish their case: Swan v. Scott, 11 S. & R. 161; Thomas v. Brady, 10 Barr 164; Scott v. Duffy, 2 Harris 20. When an act is prohibited under a penalty it is void: Burkholder v. Beetem, 15 P. F. Smith 496; Holt v. Green, 23 Id. 198; Armstrong v. Toler, 11 Wheaton 258; Craig v. Missouri, 4 Peters 426; Robey v. West, 4 N. H. 285; Pray v. Burbank, 10 Id. 377; Bancroft v. Dundas, 21 Verm. 456; Boutwell v. Foster, 24 Id. 485. In relation to liability on contracts, &c., of insurance companies who have not complied with statutory requisitions, they cited: Ætna Ins. Co. v. Harvey, 11 Wis. 414; Buxton v. Hamblen, 32 Maine 448; Gibson v. Service, 5 Taunton 433; Lindsey v. Rutherford, 17 B. Monroe 245; Rising Sun Ins. Co. v. Slaughter, 20 Ind. 520.

*S. M. Raymond, C. B. M. Smith* and *A. H. Miller*, for defendants in error.—The certificates of the auditor-general are conclusive: Act of March 31st 1823, sect. 1, 8 Sm. Laws 144; 1 Br. Purd. 628, pl. 41. Parol evidence is inadmissible to vitiate a record: Dickson v. Fisher, 1 W. Bl. 664; Adams v. Betz, 1 Watts 425.

Mr. Justice MERCUR delivered the opinion of the court, January 6th 1876.

Although twenty-seven errors were assigned, eight only were urged on the argument. The main contention in the case arises under the 4th, 5th, 6th, 7th and 8th assignments. They will be considered together. They raise the question of the effect upon the rights of the defendants in error, on their failing to comply with the requirements of the Act of 11th April 1868, Purd. Dig. 796, pl. 28.

The defendants in error are a foreign life and accident insurance company, organized under the laws of the state of Connecticut. Thorne had been acting as an agent for the company, in the western part of Pennsylvania. This action was on a bond, executed by himself and sureties conditioned, *inter alia*, that he should pay over to the company the premiums or money received by him, for it, from any source. The claim was to recover premi-

[Thorne *v.* Travellers Insurance Co.]

ums received and retained by him. The bond is dated 25th of July 1870. He ceased to act as agent the 5th of November of the same year. He is sought to be charged with money received by him as agent for the company during the intervening time.

The Act of 11th April 1868 is designed to establish a complete system, under which alone such a company, incorporated in another state, can transact business in this state.

Sect. 2, requires the company shall first appoint an agent resident within this state, and file in the office of the auditor-general a certified copy of the resolution appointing him.

Sect. 5, requires the agent to give a bond with sureties in the sum of five thousand dollars, conditioned for the faithful discharge of all the duties enjoined on him by the act. The bond shall be duly approved and recorded, and then be deposited in the office of the auditor-general.

Sect. 10, gives such agent power to transact business in every county of the Commonwealth, either in person or by subordinate agents appointed by him, and he " may from time to time appoint as many subordinate agents as he may deem proper, and certify the names and residences of the same to the auditor-general, who thereupon shall issue to each of said subordinate agents, upon payment of the usual fee of his office, a certificate showing that........, the agent, has full power and authority to transact business in any part of this Commonwealth, and that he has designated such person as his subordinate agent; and no person shall act as a subordinate agent until he has received such certificate." Thus it appears a subordinate agent cannot be appointed otherwise than through and by this certificate of the auditor-general. Without such certificate he is absolutely forbidden to act by the most positive and imperative language.

Sect. 12, prescribes the punishment which shall be inflicted on any person who shall receive premiums, forward applications, or in any way transact business for the company, without having received authority so to do, agreeably to the provisions of the act. It declares " he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined five hundred dollars for each offence." The penalties given by this section are not limited to those illegally acting as agents, but extend to the company thus suffering them to act. It declares any party receiving applications from, or sending policies to, any person not duly authorized to act as agent, shall be fined in a like sum of five hundred dollars for each offence and be prohibited from doing business in this state until the fine is fully paid.

Sect. 13, enjoins upon the district attorneys of the several counties the duties of examining every licensed agent transacting business in their respective counties; and the books of said agency, " once in each and every year," and to enforce this act and all of

its penalties against such agents, persons and companies as may offend against its provisions.

If Thorne was not duly qualified under the statute to act as agent, but did so act under instructions from the company, both he and the company were acting in violation of the express commands of the statute. If so acting, can the company sustain this suit, based on such an illegal transaction?

There can be no doubt of the constitutional power of the legislature to prescribe the conditions under which a foreign corporation shall transact business in this state, and the manner in which its agents shall be qualified, before entering on their duties.

It has often been held that an action founded on a transaction prohibited by statute cannot be maintained, although a penalty be imposed for violating the law, and it be not expressly declared that the contract be void: Mitchell *v.* Smith, 1 Binn. 118; Seidenbender *et al. v.* Charles' Administrators, 4 S. & R. 151; Swan *v.* Scott, 11 S. & R. 155; Columbia Bridge Co. *v.* Haldeman, 7 W. & S. 233; Thomas *v.* Brady, 10 Barr 164; Scott *v.* Duffy, 2 Harris 20; Holt *v.* Green, 23 P. F. Smith 198. In this last case it was said, the objection may often sound very ill in the mouth of defendant; but it is not for his sake the objection is allowed. It is founded on general principles of policy which he shall have the advantage of, contrary to the real justice between the parties. That principle of public policy is, that no court will lend its aid to a party who grounds his action upon an immoral or an illegal act. It is claimed, however, that conceding the rule that an illegal contract will not be enforced by a court, yet when it has been executed by the parties themselves, and the illegal object of it has been accomplished, the money or thing which was the price of it may be a legal consideration between the parties for a promise express or implied; and the court will not unravel the transaction to discover its origin. We may concede this view of the law to be correct, as an abstract proposition; yet it by no means controls this case. This is not an action against Thorne alone, for money had and received. It is against him and his sureties jointly, on their bond, for his alleged breach of duty as a duly appointed agent of the corporation. That he had been " duly appointed" is recited in the bond to which they subscribed their names as sureties. They had no knowledge of the illegal conduct of Thorne or of the corporation. They were no party to any fraud. They had violated no provision of the statute. They have done nothing to estop their showing the whole character of the consideration on which the bond rests. Still further, the defendants in error did not seek to recover by giving the bond alone in evidence. They went further and opened up the whole transaction between themselves and Thorne. Without the aid of that transaction the company had no case. If the transaction was illegal, then the corpo-

[Thorne *v.* Travellers Insurance Co.]

ration itself showed it had broken the law, and that it could not recover without the aid of the illegal consideration—of one prohibited by statute. The sureties might undoubtedly invoke the protection of the law to relieve them from an obligation based on an illegal consideration, and entered into on a false representation of a substantial and controlling fact: Horbach *v.* Gray, 8 Watts 497 ; Miles *v.* Stevens, 3 Barr 21.

The next question which arises is, was the evidence offered and rejected admissible ?

On the 13th of August 1866, Thorne was employed as an agent for the company, by an agreement in writing. He continued to act as agent until November 1870. He served in the same general manner after the passage of the Act of 11th April 1868, as before. It is now claimed by the company that Thorne was serving in 1870 as a subordinate agent under this Act of April 1868, although it is conceded that he never received any certificate of his license so to serve from the auditor-general. The company further contends that the certificates of the auditor-general and insurance commissioner furnish conclusive evidence of such appointment.

Let us then consider what those certificates show. The auditor-general's is dated the 28th June 1871. It contains no averment of any power or authority in Thorne to act on or after its date ; but of a power or authority as having existed during the year 1870. It is not a license authorizing the doing of any act; but an assertion, made long after he had ceased to act as agent, that he had formerly been duly qualified as a subordinate agent.

It does not profess to state the time when the general agent certified to him the appointment of Thorne as such agent. It furnishes no copy of any paper filed, or of any record made in 1870. We know no authority which makes the certificate of the auditor-general conclusive evidence of a previously existing, but terminated agency. The statute requires not only that the facts shall justify the issuing of the license, but that the certificate shall be delivered to or received by the person before he can act as a subordinate agent. It gives no authority to the auditor-general of a subsequent year to issue a license for a year which has already expired.

The insurance commissioner (to whose office all the records were transferred) certifies on the 2d of May 1874, to a copy of a paper then found in his office and attaches it to his certificate. It is headed "List of agents who held the appointments of the Travellers Insurance Company to transact its business within the Commonwealth of Pennsylvania during the year 1870." It will be observed that this language does not indicate an intention to nominate or designate any persons for appointment, or to perform any other services, but rather to declare that the persons in the list named had acted in that capacity. The name of Thorne is found

on that list.   A further examination of that list shows that it was signed, dated and sworn to by the general agent, on the 21st April 1871.   There is nothing on either the list or the records indicating that the paper was filed before that day.   If the list bore date in 1870, or if it was without date, there would be some force in the suggestion that it was deposited in the office in 1870 ; but the specific dates cast great discredit on any such presumption.   It cannot be said that either of the official certificates proves conclusively that the list was in the office of the auditor-general in 1870.

The offers are not to contradict the record ; but to rebut a presumption sought to be deduced from the certificates, and to explain where the record is silent.   Parol evidence is admissible for this purpose :  Carmony *v.* Hoober, 5 Barr 305 ; Stark *et al. v.* Fuller, 6 Wright 320.   It is proposed, substantially, to prove not only that the name of Thorne was not certified to the auditor-general while he (Thorne) was acting as agent, but that the list containing his name was surreptitiously placed in the office, so as to deceive the auditor-general, and thereby his certificate was fraudulently procured.   It is true, a record is entitled to great sanctity, in law ; but it must be an honest record.   If fraudulently made, it may be impeached by parol :  Lowry *v.* McMillan, 8 Barr 157.

It was strongly urged that the failure of Thorne to take out his license from the auditor-general constituted no defence.   If his name had been certified to the auditor-general in 1870, this argument would be entitled to consideration, but the offer is to prove that it was not then certified.   His license could not be taken out of the office until his name had first been certified in.   Hence (excepting the declarations of Rodney Dennis), we think the evidence covered by these several assignments should have been received.

The first assignment is to permitting the itemized account appended to the claim of the defendants in error to be given in evidence without proof.   This account purported to contain a statement of the several premiums received by Thorne, and of the names of the persons who had paid the same.   In the affidavit of defence each and every item in this account had been distinctly denied by Thorne.   This affidavit then cast the burden of proof on the defendants in error, and the learned judge erred in permitting the account to be given in evidence without some proof having first been given to sustain it.

We discover no merit in the remaining assignments.

Judgment reversed, and a *venire facias de novo* awarded.