De La Vergne Refrigerating Machine Company *v.* Kolischer, Appellant.

*Corporations—Foreign corporations—Authorized registered agent—Commercial agent—Contract—Act of April* 22, 1874, *P. L.* 108.

The same person may be the authorized registered agent of a foreign corporation as provided by the Act of April 22, 1874, P. L. 108, and also the commercial agent of the same corporation; but if he resigns his position as commercial agent without taking any steps to have his appointment as registered agent canceled or annulled, he continues as registered agent, and the corporation cannot be charged after such registration with doing business in this state without a registered authorized agent, so long as the public record of his appointment remains unchanged.

Where a person becomes both the authorized registered agent and the commercial agent of a foreign corporation, and subsequently resigns as commercial agent, but permits the record of his authorized agency to remain without amendment and unaltered, and thereafter enters into a contract with the corporation, he cannot, in order to invalidate the contract, aver that the corporation was doing business in the state without an authorized agent.

*Arbitration—Referee's finding of fact.*

A referee's finding of fact when confirmed by the court below, will not be reversed except for manifest error.

MESTREZAT, J., dissents.

Argued Jan. 16, 1906. Appeal, No. 268, Jan. T., 1905, by defendant, from order of C. P. No. 3, Phila. Co., Sept. T., 1900,

No. 1,657, M. L. D. overruling exceptions to referee's report in case of De La Vergne Refrigerating Machine Company v. Theodore Kolischer, Reputed Owner and Contractor. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Scire facias sur mechanic's lien.

Exceptions to report of M. Hampton Todd, Esq., referee.

The facts are stated in the opinion of the Supreme Court.

The referee reported in favor of the plaintiff for $120,082.06.

The defendant filed, inter alia, the following exceptions to the referee's report.

19. The learned referee erred in his answer to the defendant's fourth request for finding of law, which request and answer are as follows :

Registration after the making and completion of the contract in question is not sufficient. Nothing short of a registration before the contract that a foreign corporation seeks to enforce is made can give it a right of action. *Answer :* Under the facts in this case I decline to so find. [15]

20. The learned referee erred in declining to find as requested in defendant's seventh request, which request and answer are as follows :

Even though the plaintiff had never done any work in Pennsylvania other than that done under the contract on which this lien is based, yet as that contract involved the purchase of materials and the payment for labor in Pennsylvania and the continuous work there for a period of eight months, it could not be claimed as an isolated transaction, but as a " doing of business " within the meaning of the act of April 22, 1874. *Answer :* I decline to so find. [16]

21. The learned referee erred in declining to find as requested in defendant's eighth request, which request and answer are as follows :

The uncontradicted testimony being that in the erection and completion of the plant in Philadelphia the plaintiff came into this state with its agents and workmen and for a period of eight months was engaged in the continuous prosecution of its ordinary business, employing part of its capital here, and creating new obligations day by day ; that during that period half a

dozen of the employees of the plaintiff company were employed here and working on the plant continuously under a resident erecting foreman; that about thirty or forty other men, residents of Philadelphia, were employed on the work by the plaintiff during three months of that time, all earning wages in Pennsylvania; that the plaintiff had been engaged continuously in the same business in Pennsylvania for twelve years preceding the making of the contract; that it had an office in Philadelphia, and a resident agent, whose principal business was to solicit contracts for the erection of ice plants in this state; that it had an erecting foreman resident in this state, whose business it was to superintend the erection of ice plants in this state; and that it had erected and constructed a very large number of similar plants within this state, both before this contract was made and between the time that it was made and the date on which this lien was filed; such being the case, the plaintiff company was engaged in doing business in Pennsylvania within the meaning of the act of April 22, 1874. *Answer:* I decline to so find. [17]

22. The learned referee erred in declining to find as requested in defendant's ninth request, which request and answer are as follows:

The uncontradicted evidence being that Mr. Kolischer's official or agency relations with the plaintiff company ended on September 1, 1899; that after that date Kolischer owed no duties to the plaintiff; that he was not thereafter on its pay roll, and that he was not thereafter in charge of its office in Philadelphia and made no use of that office; that between September 1, 1899, and June 11, 1900, the plaintiff had no registered agent in Pennsylvania who was authorized to transact business for it there; that there was no break in the carrying on of business by the plaintiff company in Pennsylvania at September 1, 1899, since Humes, the agent who succeeded Kolischer, was securing contracts and the plaintiff was erecting plants in Pennsylvania continuously after September 1, 1899, the same as had been done before that date; and the contract on which the work was done having been executed on September 16, 1899, and declared completed by the plaintiff company on May 28, 1899, the plaintiff company failed to comply with the provisions of the act of April 22, 1874, prior to the making of the contract and the

doing of work thereunder which is the basis of the lien filed, and hence no recovery can be had by the plaintiff in this action. *Answer :* I decline to so find. [18]

23. The learned referee erred in declining to find as requested in defendant's tenth request, which request and answer are as follows :

The *uncontradicted testimony being that the ice plant erected by the plaintiff for the defendant in this case was never completed, or substantially completed, in New York; that many essential parts and materials going into its construction were bought by the plaintiff in Pennsylvania and delivered at Philadelphia ; that the parts and materials which came from New York were sent to Philadelphia in several thousand pieces ; that the work of constructing the plant in Philadelphia out of the materials thus collected from New York and from various parts of Pennsylvania covered a period of some eight months ; that during this eight months half a dozen of the plaintiff's employees were over from New York and working constantly in Philadelphia at the job, and that from thirty to forty men living in Philadelphia were there employed by the plaintiff and worked constantly on the job for a period of three months ; that the plaintiff had control of the materials sent to Philadelphia after their arrival there, and until the completion of the plant, and it could either put them into the plant or substitute other similar materials for them ; that the plaintiff had a regular branch office, an authorized agent, and a resident erecting foreman in Philadelphia, and had had for several years prior to the making of this contract; the plaintiff was not engaged in interstate commerce within the protection of the federal constitution, but was doing business in the state of Pennsylvania, and amenable to the provisions of the act of April 22, 1874.* *Answer :* I decline to so find. [19]

24. The learned referee erred in declining to find as requested in defendant's eleventh request, which request and answer are as follows :

When an *article which is to be delivered in Pennsylvania is completed there and essential parts of it manufactured there, and when the article contracted for is for the first time put together and constructed there, as regards the commerce clause of the federal constitution, the origin of a part of the materials*

and machinery out of which it is constructed " cuts no figure " (118 Fed. Rep.) the prohibition of the act of 1874 being against the doing of business in this state and not against the importation of the materials and machinery.  *Answer :* I decline to so find. [20]

25.  The learned referee erred in declining to find as requested in defendant's twelfth request, which request and answer are as follows :

If the business carried on by the plaintiff in this state included something more than the sale and delivery of goods to be brought into this state upon orders taken either in or out of the state, the act of April 22, 1874, is applicable, and it is entirely competent for the state of Pennsylvania to prescribe the registration of the agents or offices as a condition upon which such interstate business may be carried on by a foreign corporation.  *Answer :* I decline to so find. [21]

26.  The learned referee erred in his answer to the defendant's thirteenth request, which request and answer are as follows :

The uncontradicted evidence being that the contract between the plaintiff and defendant was signed by the plaintiff in New York, mailed to Mr. Kolischer in Philadelphia on September 15, 1899, signed by Mr. Kolischer in Philadelphia, and mailed by him to the plaintiff from Philadelphia, on September 16, 1899 ; the contract in question was made and executed in Philadelphia when Mr. Kolischer deposited it in the mail box in Philadelphia.  *Answer :* Refused. [22]

28.  The learned referee erred in declining to find as requested in the defendant's seventeenth request, which request and answer are as follows :

Under all the facts in this case, by reason of the act of April 24, 1874, the plaintiff cannot recover in this action.  *Answer :* I decline to so find. [23]

*Errors assigned* among others were (15–23) refusal of above exceptions.

*W. A. Glasgow, Jr.,* and *H. Gordon McCouch,* with them *Henry S. Drinker, Jr.,* for appellant.—There can be no recovery upon the lien filed because the De La Vergne Company failed

to comply with the provisions of the Act of April 22, 1874, P. L..108, prior to the making of and during the completion of the contract.on which it is based : Citizens' Trust, etc., Co. v. McCanna, 6 Pa. Dist. Rep. 25 ; Delaware River Quarry, etc., Co. v. Bethlehem, etc., Pass. Ry. Co., 204 Pa..22 ; Building.Loan & Savings Assn. v. Berlin, 15 Pa. Superior Ct. 393 ; Leisy v. Hardin, 135 U. S. 100 (10 Sup. Ct. Repr. 681).; Schollenberger v. Penna., 171 U. S. 1 (18 Sup. Ct. Repr. 757) ; Austin v. Tennessee, 179 U. S. 343 (21 Sup. Ct. Repr. 132) ; Cook v. Marshall County, 196 U. S. 261 (25 Sup. Ct. Repr. 233) ; Emert v. Missouri, 156 U. S. 296 (15 Sup. Ct. Repr. 367) ; Osborne v. Florida, 164 U. S. 650 (17 Sup. Ct. Repr. 214) ; New York v. Roberts, 171 U. S. 658) 19 Sup. Ct. Repr. 58).

*H. .B. Gill* and *William A. Jenner* with them *John R. Read, Silas W. Pettit* and *Louis B. Runk,* for appellee, cited : Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 184 ; Mearshon v. Pottsville Lumber Co., 187 Pa. 12 ; Crutcher v. Kentucky, 141 U. S. 47 (11 Sup. Ct. Repr. 851) ; Osborne v. Florida, 164 U. S. 650 (17 Sup. Ct. Repr. 214) ; Louisville & Nashville R. R. Co. v. Eubank, 184 U. S. 27 (22 Sup. Ct. Repr. 277).; Kilgore v. Smith, 122 Pa. 48 ; New Jersey Steel Tube Co. v. Riehl, 9 Pa. Superior Ct. 220 ; Milsom Rendering & Fertilizer Co. v. Kelly, 10 Pa. Superior Ct. 565 ; Wolff Dryer Co. v. Bigler, 192 Pa. 466 ; West Jersey Ice Mfg. Co. v. Armour, 12 Pa. Superior Ct. 443 ; Pavilion Co. v. Hamilton, 15 Pa. Superior Ct. 389 ; Bldg. Loan & Savings Assn. v. Berlin, 15 Pa..Superior Ct. 393.

OPINION BY MR. JUSTICE ELKIN, March 19, 1906 :

From.1892 to 1899 appellant was the authorized and registered agent of appellee, a foreign corporation, as required by the act of 1874. Just when the agency relation terminated, if at all, is an important, and in some respects, the decisive question raised by this appeal. It is conceded on all sides that.it continued up to September 1, 1899, but the views differ as to what was the legal status of the parties from and after that date. . .The referee and.the learned .court below held .that. the agency of the appellant terminated as of that date, and that

appellee had no registered agent at the time the substituted contract was formally executed two weeks later. Notwithstanding these views of the law, the contract was held to be valid on the ground, and for the reasons pointed out, that the act of 1874 did not apply.

The second, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twenty-first, twenty-second and twenty-third assignments of error broadly raise for review all questions relating to the act of 1874 as applied to the agency of the appellant. The original contract between the Standard Ice Manufacturing Company of New Jersey and appellee was entered into July 29, 1899, at which time appellant was the duly authorized registered agent of appellee as required by law. It is clear, therefore, that while the negotiations were going on which led to the execution of the original contract and on the date when executed, all parties to same had a legal status to make a valid contract. If the situation at this point had remained unchanged the question of an authorized agent under the act of 1874, could not have been raised. The situation, however, did not remain unchanged, and hence this appeal.

The New Jersey corporation having been incorporated to erect and operate an ice plant in the city of Philadelphia, was advised by counsel that it could not hold real estate in Pennsylvania, and as a result a change in the manner of taking title and organizing a new corporation was deemed necessary. Appellant being the principal executive officer of the New Jersey corporation, suggested that title to the real estate which it was proposed to purchase, should be taken in his name and held by him until a Pennsylvania corporation could be incorporated for the purpose of taking it over. This plan was agreed to and title to the real estate was so taken. It was then deemed advisable by appellant and his New Jersey corporation to substitute another contract for the one already entered into with appellee so that the new contract should stand in the name of the holder of the legal title to the real estate. At the instance and for the convenience and benefit of appellant and the New Jersey corporation, the change was made, and a new contract embodying the terms of the old was executed in the name of appellant on or about September 15, 1899.

We must now consider what happened between July 29, 1899, at which time all parties had a legal status to make a valid contract, and September 15, following, the date of the execution of the substituted contract, when it is contended appellee did not have an authorized registered agent as required by the act of 1874. The testimony shows what did happen. On September 1, appellant offered his resignation, which was accepted as of that date, thus severing his commercial and business relations with appellee. He did nothing more in this connection. He took no steps to have his appointment as registered agent canceled or annulled. The public record of his appointment as such in the office of the secretary of the commonwealth remained unaltered. The certificate of his appointment hung on the wall of the office of appellee in the city of Philadelphia for the inspection of the public as it had done for several years prior thereto. The office, or place of business, which appellee had established and maintained for a period of ten or twelve years remained unchanged and was kept open as theretofore. There was no change in the situation except that appellant took a private office in another part of the same building. Two weeks later the substituted contract was executed and appellant now claims there was no authorized registered agent at that time, in consequence of which it is claimed to be illegal and void.

This brings us to a consideration of the requirements of the act of 1874, and the constitutional provision upon which it is based. Section five of article sixteen of the constitution ordains that "no foreign corporation shall do any business in this state, without having one or more known places of business, and an authorized agent or agents in same, upon whom process may be served." The act of April 22, 1874, P. L. 108, was passed to enforce this constitutional provision. It makes it unlawful for a foreign corporation to do business in this state without having a place of business and a registered authorized agent. It requires a statement under the seal of the corporation to be filed in the office of the secretary of the commonwealth, showing the name and purpose of the corporation, the location of its offices, and the name or names of its authorized agent or agents. This becomes a public record for information of all persons. In addition, the act requires a certificate to be issued

by the secretary of the commonwealth setting forth the facts as they appear of record in his office, which must be preserved for public inspection in the place of business designated by the foreign corporation. In the construction of this act this court has held that its purpose is to bring foreign corporations doing business in this state within the reach of legal process, which purpose is not accomplished by a registration at the pleasure of its officers, or when it may be to their interest to appeal to our courts, and that nothing short of a prior registration can give such corporation a legal standing to enforce a contract. It has also been held that a contract made by a foreign corporation before establishing a place of business and registering an authorized agent as required by the act, is void and cannot be enforced in our courts: Thorne v. Insurance Company, 80 Pa. 15; Lasher v. Stimson, 145 Pa. 30; Delaware River Quarry, etc., Co. v. Pass. Ry. Co., 204 Pa. 22.

We do not question the authority of these cases. The rule therein stated is the settled law of this commonwealth. It, however, does not follow that the rule applies to the facts of the case at bar. The act requires a place of business to be designated and an authorized agent to be registered. Both of these requirements had been fully met by appellee for many years prior to the execution of the contract in question. The place of business continued in the same office and the same building after as before the date of the contract, and hence the requirements of the act in this respect had been fully complied with. We need give this branch of the case no further consideration.

It must now be determined whether the private arrangements by which appellant severed his business relations with appellee ipso facto annulled his appointment as registered agent under the law. In other words, did the resignation of appellant as commercial agent of appellee annul his appointment as authorized agent under the act? We think not. To so hold necessarily implies that in order to comply with the act every authorized registered agent must also be the commercial and business agent of the corporation. This is not a reasonable interpretation of the statute. As was said in the latest utterance of this court on the question in Delaware River Quarry, etc., Co. v. Pass. Ry. Co., 204 Pa. 22, by Mr. Justice FELL:

" The purpose of the act is to bring foreign corporations doing business within this state within the reach of legal process." The place designated and the agent registered are of importance primarily in the serving of legal process upon and in the transaction of legal business with the foreign corporation. It was not the purpose of the act to regulate the commercial business of a foreign corporation. It is true the authorized registered agent may be, and often is, the commercial business agent, but it does not follow that in order to comply with the act a registered agent must perform commercial duties. Foreign corporations frequently appoint attorneys at law as their authorized registered agents and name their offices as places of business. In such cases it is not contemplated that the registered agent is the commercial business agent, or that his office is the place to make contracts and display goods, but he is the agent with whom, and his office is the place where, the legal business, such as the service of process and any other legal matter, may be made or transacted. This is the sense in which the word "agent" and the phrase "place of business" are used in the constitution and the act of 1874.

As applied to the present case, this means that the appointment of appellant as registered agent gave him a legal status as an authorized agent, disconnected with and independent of the performance of his commercial duties as the business agent of appellee. When, therefore, he resigned as commercial agent on September 1, he did not by that act annul his appointment as registered agent. To sustain the contention of appellant in this respect, it would be necessary to hold that a foreign corporation must not only have a place of business and an authorized registered agent, but to make the service of process legal and the business lawful, the registered agent must be physically present in the place of business when the process is served or the details of the business transacted. Such a construction of the act is not only unnecessary to effectuate its purpose, but would surround it with restrictions and limitations never intended. There must be at least one place of business and one registered agent in every case. There must also be as many registered agents as there are places of business, and each registered agent must have his headquarters at the designated place of business. When these conditions are complied

with, the requirements of the act are met. After that the details of the commercial business and the service of legal process may be transacted or made, in the place of business, or outside of it, as in every other case of agency. At the time of the resignation of appellant as commercial agent of appellee the public record of his appointment as registered agent remained the same as before. He did not withdraw as registered agent, gave no notice of a change in his relation as such, and under these circumstances it cannot be doubted that if legal process had been served on him after September 1 it would have been good. The act imposes duties on the agent as well as the principal. The third section makes it a misdemeanor for the agent to do business in the state without having complied with its provisions, thus imposing imperative duties to be performed by him. Appellant accepted the appointment as registered agent, held himself out to the public as such for many years, permitted the record of his agency to remain without amendment, took no steps to have it altered, and cannot now deny his legal relation in order to invalidate a contract to which he is a party. The requirements of the act of 1874 are wise and wholesome provisions of law, intended as a protection to our citizens, and neither the principal nor the registered agent can deny the agency and thus defeat the purpose of the act so long as the public record establishing the relation remains unchanged in the office of the secretary of the commonwealth.

We are of opinion that appellee had a place of business and a registered agent within the meaning of the act of 1874 when the substituted contract was entered into, and all the assignments of error relating to this question are overruled.

There are other meritorious grounds upon which to affirm the judgment, but in our view of the law no useful purpose can be served by discussing them. On the questions of fact raised by the appeal the findings of the learned referee are conclusive unless manifest error was committed. We have examined with care the report of the referee, and the testimony relied on by appellant to sustain the assignments, but except as to registered agent, have not been convinced that there was manifest error.

Assignments of error overruled and judgment affirmed.

MESTREZAT, J., dissents.