## BUFFALO REFRIGERATING MACH. CO. v. PENN HEAT & POWER CO.

(Circuit Court of Appeals, Third Circuit. January 24, 1910.)

### No. 88.

1. COURTS (§ 366*)—FEDERAL COURTS—RULES OF DECISION—STATE STATUTES —CONSTRUCTION.

The scope of a state statute regulating foreign corporations doing business within the state, as determined by the decisions of the highest court of the state, is binding on the federal tribunals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–968; Dec. Dig. § 366.*

State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. CORPORATIONS (§ 657*)—FOREIGN CORPORATION—"DOING BUSINESS WITHIN STATE"—COMPLIANCE WITH STATE LAW.

Plaintiff, a corporation not registered in Pennsylvania, was engaged in engineering and contracting. It had no factory or workshop where anything was made and did not manufacture the machinery which it designed and sold; its capital being chiefly invested in patterns, drawings, and the good will of its business, and its usual agreements contemplating a particular plant contracted for in accordance with such an agreement as was in controversy with defendant. *Held*, that plaintiff's purchasing and assembling the necessary parts to complete the plant it had agreed to construct for defendant, was not interstate commerce, but constituted "doing business in Pennsylvania" where the plant was to be erected in violation of Act Pa. 1874 (P. L. 108), prohibiting foreign corporations from "doing business within the state" without having complied with such act, and hence plaintiff could not recover on the contract.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 657.*

For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160; vol. 8, pp. 7640–7641.

Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke Collender Co., 72 C. C. A. 622.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by the Buffalo Refrigerating Machine Company against the Penn Heat & Power Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Edward A. & Wm. T. Day, Reed, Smith, Shaw & Beal, and George E. Shaw, for plaintiff in error.

R. A. & James Balph, Patterson, Sterrett & Acheson, and Thomas Patterson, for defendant in error.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before GRAY and LANNING, Circuit Judges, and J. B. McPHER-SON, District Judge.

J. B. McPHERSON, District Judge. The Pennsylvania act of 1874 (P. L. 108) was passed to carry into effect article 16, § 5, of the state Constitution:

"No foreign corporation shall do business in this state without having one or more places of business and an authorized agent or agents in the same upon whom process may be served."

The act itself is as follows:

"An act to prohibit foreign corporations from doing business in Pennsylvania, without having known places of business and authorized agents.

"Section 1. Be it enacted, etc., that from and after the passage of this act, no foreign corporation shall do any business in this commonwealth, until said corporation shall have established an office or offices and appointed an agent or agents for the transaction of its business therein.

"Sec. 2. It shall not be lawful for any such corporation to do any business in this commonwealth, until it shall have filed in the office of the secretary of the commonwealth a statement, under the seal of said corporation, and signed by the president or secretary thereof, showing the title and object of said corporation, the location of its office or offices, and the name or names of its authorized agent or agents therein: and the certificate of the secretary of the commonwealth, under the seal of the commonwealth, of the filing of such statement, shall be preserved for public inspection by each of said agents, in each and every of said offices.

"Sec. 3. Any person or persons, agent, officer or employé of any such foreign corporation, who shall transact any business within this commonwealth for any such foreign corporation, without the provisions of this act being complied with, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment not exceeding thirty days, and by fine not exceeding one thousand dollars, or either, at the discretion of the court trying the same."

As the scope of this statute has been made the subject of earnest controversy, not only in the present case, but in some others that have reached this court, it may not be amiss to review the Pennsylvania decisions; for the construction put upon the act by the Supreme Court of the state is, of course, binding upon the federal tribunals. The first case to reach that court was Barr v. King, 96 Pa. 485, 488, in which it was decided that a foreign corporation which had obeyed the statute and had appointed an agent might be a garnishee in execution attachment. The court said:

"Now by general statutes all foreign corporations, as a condition on which they may transact business in this state, must establish an office and have an agent, a chief purpose of which is that process may be served and such corporation be compelled to answer in all suits or actions brought against them. * * * Natural and artificial persons, citizens of other states, who are doing business here, ought to stand on an equal footing with each other and with the citizens of this state. A natural person who is a citizen of another state coming within the jurisdiction of our courts is liable to all actions as if resident in this state; and legislation has done much to place foreign corporations on an equality with domestic as respects the right to sue and the liability to be sued."

In Hagerman v. Empire Slate Co., 97 Pa. 534, the corporation had not appointed an agent under the act, and sought to have a sheriff's return of service set aside on the ground, inter alia, that the person upon

whom the process had been served had not been so appointed, although he was in fact the agent of the company, and although the sheriff's service would have been good under an earlier statute. The court met this objection by holding:

"That when a foreign corporation transacting business in this state has failed to establish an office and report the name of its agent to the secretary of the commonwealth, but has some person residing therein who acts as its agent, it must be presumed that the corporation has substituted such agent as one on whom service is authorized to be made, to the extent at least of its unfinished business in this state."

These two cases are concerned with one object of the act, namely, to compel foreign corporations to come within the reach of domestic process. This is made a condition precedent to their right to transact business within the state. The next case (Kilgore v. Smith, 122 Pa. 48, 15 Atl. 698) refers to another object. The controversy was over the title to certain personal property. The plaintiff's title was derived from a Maryland corporation and was attacked because the contract that gave him title was made in Pennsylvania, and because it appeared that the corporation had not complied with the act. It was held that the contract was nevertheless good, for the reason that the corporation was not "doing business" within the state; the court saying:

"It has never been held that a citizen of Pennsylvania may not be a member of, or stockholder in, a corporation of another state, or that a contract between such member and his corporation is ultra vires, because the latter had not complied with the provisions of the act of assembly. Nor do we think it material that an occasional meeting of the directors was held at Delta, a town partly in Maryland and partly in this state. Their acts are not necessarily void for such reason. Morawetz on Corporations, § 533. One of the objects of the act of assembly was to bring corporations, employing their capital in this state and doing business here, within the taxing power of the commonwealth. It does not appear that this corporation brought any of its capital into this state. Its place of business was in Maryland. Its capital, if it had any, was there. It had contracts with some of its members, residing in Pennsylvania, by which they were to can their fruit and hold the same to be disposed of by the corporation. It was a kind of farmers' co-operative association located in Maryland, with its membership in both states."

That the corporation must be "doing business" in the state before the act can affect its contracts was the precise point in Campbell, etc., Co. v. Hering, 139 Pa. 473, 20 Atl. 1061. There a foreign corporation brought suit to recover the price of a printing press, and recovery was resisted on the ground that the act had not been complied with. But the affidavit of defense was held to be insufficient because it did not aver also that the corporation was "doing business" in the state. This fact, the court said, was "essential to his defense," and the defendant's omission to aver it was fatal. In Lasher v. Stimson, 145 Pa. 30, 23 Atl. 552, it appeared by a special verdict that an unregistered foreign corporation was "carrying on the business of the manufacture and sale of soap or washing compound within the state of Pennsylvania." Under these circumstances, it was held that a person who acted as the corporation's agent was chargeable with knowledge that it could not give him lawful authority to act, and was personally liable upon a

contract which he had undertaken to make in its behalf. The court said that a foreign corporation must comply with the act as—

"a condition precedent to its recognition and legal existence (in the state). It cannot, by virtue of its charter, exercise its functions beyond the territorial limits of the sovereignty which created it. It cannot transact business in other states or sovereignties without their consent expressed or implied. Any person who assumes to act for it must be considered as having knowledge of its powers and their limitations, and whether it has conformed to the requirements of the jurisdiction in which he proposes to represent it. If he does business for it here, in violation of the conditions prescribed, he commits an offense which is punishable by fine and imprisonment."

The terms laid down by the act were not onerous nor in conflict with any constitutional provision or rule of public policy;

"But they are clearly prohibitory, and they inevitably stamp as unlawful any business transaction within the state by a foreign corporation which has not complied with them. It is only by its observance of them that it can have a legal existence for business purposes within this jurisdiction or acquire contractual rights which our courts will recognize."

The case of East Side Bank v. Columbus Tanning Co., 170 Pa. 1, 32 Atl. 539, is of no importance in the discussion. But the next decision (Mearshon v. Lumber Co., 187 Pa. 12, 15, 17, 40 Atl. 1019, 1020), required the court to consider a new factor, one that limited the scope of the statute, and modified the sweeping declaration of Lasher v. Stimson, that "any business transaction within the state" was unlawful if the corporation had not obeyed the command of the act. The facts upon which the decision is based are thus stated:

"The plaintiff is a corporation duly incorporated in the state of Michigan. Its manufacturing operations are there conducted; its capital is there invested. None of it is invested here. The order for the goods in question was given to its salesman and agent in Pennsylvania and by him sent to the plaintiff, who executed the order in Michigan. Under all the decisions this is not a doing of business in this state which makes it necessary to comply with the provisions of the act of 1874, and hence the defense made on that ground has no merit."

And it was evidently necessary to hold that this was not a doing of business within the state, because, if the statute forbade such a transaction, it encountered the commerce clause of the federal Constitution. This appears by the following quotation from the opinion:

"Passing by that question, the case (below) was ruled upon the authority of the Blakeslee Mfg. Co. v. Hilton, 5 Pa. Super. Ct. 184. There are other cases which will be referred to presently to the same effect, and we are of opinion that the decisions in all of these cases are correct, and should be followed by us in deciding the present controversy. The plaintiff in that case was a foreign corporation located in the state of Illinois, and the action was brought to recover the price of a steam pump manufactured in that state and sold to the defendant, a corporation in Pennsylvania. Among other defenses set up in the affidavit of defense was the allegation that the plaintiff was a foreign corporation and had not complied with the requirements of the act of 1874, in reference to establishing an office and appointing an agent within the state. Mr. Justice Wickham, delivering the opinion of the court, said: 'All that is hereby alleged is entirely consistent with the conduct of a foreign corporation engaged in strictly interstate commerce. It may advertise its goods, take orders, make contracts of sale respecting the same, and ship them to customers in this state. It may also employ agents living in Pennsylvania to go from county to county, from town to town, and from

person to person to secure orders. Or the agent may never go outside of his own county, city, or town, thus being in one sense a local agent, and yet be doing a business which is not and cannot be reached under our act of 1874. * * * The words "doing any business," as used in the act, should not be construed to mean taking orders or making sales by sample by agents coming into our state from another for that purpose. To hold otherwise would make the act offend against the Constitution of the United States as imposing unlawful restrictions on interstate commerce. Cooper Mfg. Co. v. Ferguson, 113 U. S. 727 [5 Sup. Ct. 739, 28 L. Ed. 1127]; Robbins v. Taxing District of Shelby County, 120 U. S. 489 [7 Sup. Ct. 592, 30 L. Ed. 694]; Brennan v. City of Titusville, 153 U. S. 289 [14 Sup. Ct. 829, 38 L. Ed. 719]; and a number of other cases. The above and numerous other decisions of the Supreme Court of the United States and of the highest tribunals fully establish the rule that a corporation of one state may send its agents to another to solicit orders for its goods, or contract for the sale thereof, without being embarrassed or obstructed by state requirements as to taking out licenses, filing certificates, establishing resident agencies, or like troublesome or expensive conditions.' The facts of the case cited are quite similar to those of the case at bar, and we regard the foregoing decision as quite in point, and controlling the question at issue. An entirely similar ruling was made in the case of Cooper Mfg. Co. v. Ferguson, supra, where it was held that a statute which imposes limitations upon the power of a corporation created under the laws of another state to make contracts within the state for carrying on commerce between the states violates that clause of the Constitution which confers upon Congress the exclusive right to regulate that commerce."

It will be observed that in Mearshon v. Lumber Co., and in Blakeslee Mfg. Co. v. Hilton, the manufacturing operation of the company was conducted outside the state of Pennsylvania, so that the sale and shipment of the product to a resident of this commonwealth was clearly commerce between the states.

The two cases of American Clay Mfg. Co. v. American, etc., Co., 198 Pa. 189, 47 Atl. 936, and Hovey's Estate, 198 Pa. 385, 48 Atl. 311, may be passed over as of no particular value. But People's Building Ass'n v. Berlin, 201 Pa. 1, 50 Atl. 308, 88 Am. St. Rep. 764, is much more pertinent. There it was held that a New York building association did not do business in Pennsylvania merely by lending money to a member residing in Pennsylvania, and by taking a mortgage on his realty within the state. The further facts upon which the decision is predicated are as follows:

"As we have already seen, under the articles of association and the by-laws, and as a matter of fact, the business of the association was done in New York. Its corporate functions were all exercised there. The applications for stock and for the loan were made and considered in New York and there accepted. By the express terms of the by-laws, the money paid by the stockholders and borrowers was to be paid there, as was also the payment of the money to the defendant by the association in completion of the transaction. In the contemplation of the law, the entire contract, from inception to the finish, was performed in New York.

"The opinion of the superior court seems to be grounded upon the assumption that the transaction involved the investment of employment of a part of the plaintiff's capital within the state of Pennsylvania. The money was, however, loaned on the bond, a New York contract, and the mortgage was given merely as security. The plaintiff took no title to any property in Pennsylvania by the transaction. It merely made a loan of part of its capital to one of its stockholders, who was a citizen of Pennsylvania. The capital, if employed in the state of Pennsylvania, was so employed by a citizen of Pennsylvania, and not by the plaintiff corporation. In so far as the business

of loaning money was concerned. it was carried on in the state of New York, and not in the state of Pennsylvania."

It may be noted, in passing, that the court also referred to Swing v. Munson, 191 Pa. 582, 43 Atl. 342, 58 L. R. A. 223, 71 Am. St. Rep. 772 (a suit on a policy of insurance issued by a foreign company), which is often cited in this connection, and distinguishes it on the ground that:

"Insurance cases stand upon a basis of their own. The business of insurance has been held not to be commerce, as an insurance policy has been defined merely as a contract of indemnity, and for this reason not protected as interstate commerce."

In Delaware River, etc., Co. v. Railway Co., 204 Pa. 22, 53 Atl. 533, the thought that underlay the decision in People's Ass'n v. Berlin was again referred to, and it was held that, where a foreign corporation came into Pennsylvania and prosecuted its ordinary business here without registration, the act applied to it and forbade recovery on a contract that was made before the statutory requirements had been fulfilled. The present Chief Justice pointed out that:

"This act has been liberally construed, and isolated transactions between a foreign corporation and citizens of this state have been held not to come within its prohibition, and only such corporations as have entered this state by their agents and prosecuted their ordinary business here have been construed as 'doing business' in violation of the act."

But he went on to show that the plaintiff was clearly within the prohibition of the act, because:

"It came into the state with its agents and workmen and for the period of six months was engaged in the continuous prosecution of its ordinary business, employing a large amount, if not all, of its capital and creating new obligations day by day."

He also declared:

"The purpose of the act is to bring foreign corporations doing business in this state within the reach of legal process. This purpose is not accomplished by a registration of the corporation at the pleasure of its officers, or when it may be to their interest to appeal to our courts. The act is for the protection of those with whom it does business or to whom it may incur liability by its wrongful acts, and nothing short of a registration before the contract that it seeks to enforce is made can give it a right of action. Any other construction of the act would violate its plain words and wholly defeat its object by affording protection to the corporation and denying it to the public."

A similar question arose in New York, etc., Construction Co. v. Winton, 208 Pa. 167, 57 Atl. 955. The company was a New Jersey corporation chartered for the purpose of constructing railroads and of mining and transporting coal and other minerals. It lent money to a resident of Pennsylvania; the loan being secured by a mortgage upon his coal property, and the purpose of the loan being to furnish capital to develop his land and to mine the coal, in order that the company might carry it at a profit. The suit was upon the mortgage, and it was held that the company's failure to register under the act was not a defense; that its agreement with the mortgagor concerning the development of his land was not involved in the suit, but simply the loan of its money; and that the making of the loan was not doing business, because:

"The construction company was not chartered to engage in the business of loaning money, and when it made this loan it was not 'doing business' in contravention of the act of April 22, 1874 (P. L. 108). It was incorporated in the state of New Jersey for the purpose of constructing railroads and of mining and transporting coal and other minerals, etc. Had it employed its capital in carrying on this or any other business in this state, it would have brought itself within the prohibition of the statute. But the money sought to be recovered here was not invested or employed in this state in any business enterprise by the corporation. It was loaned to the appellant's decedent, a citizen of Pennsylvania, who employed it in his business for his own use and benefit. While a corporation can have no legal existence beyond the sovereignty creating it, yet our state has recognized the comity existing among the several states of the Union, which permits a corporation of one state to sue in a foreign jurisdiction. The exercise of such power by a foreign corporation is not regarded as prejudicial to the interests of the state nor repugnant to its policy. What our Constitution and the statute of 1874 prohibit is doing business in the state by a foreign corporation without having first complied with their provisions. We have already pointed out that the indebtedness attempted to be recovered here does not grow out of any business operations conducted or carried on by the appellee in this state."

The latest decision of the Pennsylvania court upon this act, so far as we are advised, is De La Vergne Refrigerating Co. v. Kolischer, 214 Pa. 400, 63 Atl. 971. The case was decided upon a point that does not concern us now, namely, that the same person may be a registered agent under the act and also a commercial agent of the corporation, and that resignation of his commercial agency does not, of itself, affect his agency under the statute. For present purposes, the only value of the case is the fact that it approves the construction announced by the former decisions:

"In the construction of this act this court has held that its purpose is to bring foreign corporations doing business in this state within the reach of legal process, which purpose is not accomplished by a registration at the pleasure of its officers, or when it may be to their interest to appeal to our courts, and that nothing short of a prior registration can give such corporation a legal standing to enforce a contract. It has also been held that a contract made by a foreign corporation before establishing a place of business and registering an authorized agent, as required by the act, is void and cannot be enforced in our courts. Thorne v. Insurance Co., 80 Pa. 15, [21 Am. Rep. 89]; Lasher v. Stimson, 145 Pa. 30 [23 Atl. 552]; Delaware River Quarry, etc., Co. v. Pass. Ry. Co., 204 Pa. 22 [53 Atl. 533].

"We do not question the authority of these cases. The rule therein stated is the settled law of this commonwealth."

Other questions were raised and decided in the court below, and these are casually referred to in the following language:

"There are other meritorious grounds upon which to affirm the judgment; but, in our view of the law, no useful purpose can be served by discussing them."

Obviously, however, a passing reference such as this could not have been intended to approve in bulk the findings and opinion of the court below, or to incorporate them into the judgment of the appellate tribunal.

There is one more case (Wolff Dryer Co. v. Bigler, 192 Pa. 466, 43 Atl. 1092), and we have reserved it for separate consideration, because it is relied upon by the plaintiff in error as decisive of the present dispute. The reporter's statement is said to be materially incomplete, and

we have therefore examined the full record and the briefs of both parties. From these sources it appears, in addition to the facts given by the reporter, that the company was chartered to "manufacture, erect, sell, and lease steam dryers, and own, control, sell, and lease and provide any patents and devices and other properties in connection therewith," and that it had a factory in Chicago, where some of the preliminary work upon certain parts of the dryer was done. Other parts were ordered from manufacturers either in Pennsylvania or in other states, and were shipped into Pennsylvania and there assembled by the company to make a finished machine. The company had also sold several other machines in the state on similar terms. To what extent the court was influenced by such facts as are not referred to in its opinion can only be matter of conjecture; and, after giving careful attention to the argument of the plaintiff in error upon this point, we must profess our unwillingness to enter that field. As it seems to us, the only safe position for us is to accept the court's statement concerning the ground upon which the judgment was based, for it is impossible that we should know what weight was given to facts about which the court is silent. All that is said concerning the facts now pertinent is contained in the following quotation:

"By the original contract between the parties, the plaintiff granted to the defendants the right to construct and use a machine for drying bricks, and agreed to sell them the parts of the machine and numerous appliances necessary for its use at a stated price. The buildings required were to be constructed by the defendants. After the machine was set up it was to be tested, and then accepted or rejected. If accepted, it was to remain the property of the plaintiff until paid for, with the right to remove it if payments were not made as provided by the agreement. If rejected, it was to be removed by the plaintiff at its expense, and all moneys which had been paid or notes which had been given were to be returned, the contract to be canceled, and neither party was to have any claim against the other."

Then follow certain paragraphs not now relevant, and, finally, this:

"The contention that the plaintiff could not maintain an action in this state, because it was a foreign corporation, and had not complied with the provisions of the act of April 22, 1874 (P. L. 108), is without merit. It had no office or place of business in Pennsylvania, and no part of its capital was here. The machinery sold was shipped either directly from its factory in Chicago, or upon its orders given to other manufacturers. The fact that its agent came into this state and made contracts for machinery to be delivered here did not bring it within the inhibition of the act of 1874. Mearshon & Co. v. Lumber Co., 187 Pa. 12 [40 Atl. 1019, 67 Am. St. Rep. 560]."

In other words, the court seems to put the decision upon the ground that the plaintiff was a manufacturer with a factory in Chicago, and had sold the machine to be delivered in Pennsylvania either upon its own shipment or upon orders given to other manufacturers; and the reference to Mearshon v. Lumber Co. confirms the belief that the decision was based upon this ground alone. We see no reason, therefore, to suspect that the court was diverging in any respect from the construction of the act that had previously been announced, or to modify any of its earlier decisions; but, if it is thought that such a purpose is discernible, and that the court really intended to modify the standard by which the doing of business should be tested, it seems

plain from some of the later cases, to which reference has already been made, that the intention was afterwards abandoned. As has been pointed out, these cases turn upon the question whether the company is exercising its corporate activity in the state; or, in other words, is pursuing here the objects which its charter permits it to accomplish.

This court has twice had occasion recently to pass upon the effect to be given to the Pennsylvania statute, and has followed the decisions of the state court by holding that, where a corporation seeks to exercise its charter powers in Pennsylvania, it must first comply with the act. In Pittsburgh Construction Co. v. West Side, etc., Co., 154 Fed. 929, 83 C. C. A. 501, 11 L. R. A. (N. S.) 1145, a West Virginia corporation that was organized to construct railways was denied the right to recover on a construction contract that was entered into three weeks before the company obeyed the statute. And in Colonial Trust Co. v. Montello Brick Works, 172 Fed. 310, 97 C. C. A. 144, it was held that an unregistered Delaware company that was chartered to own the stock and finance the operations of certain Pennsylvania corporations and had exercised its franchises for these purposes was doing business in the state and could not recover upon its contracts made in carrying out its corporate objects.

It seems clear, therefore, that the plaintiff in error was not entitled to recover upon the contract that was sued on in the circuit court. The Buffalo Company is a New Jersey corporation, but had not registered in Pennsylvania at the time when the contract was made. The agreement provided (to quote from the brief of the plaintiff's counsel) that the defendant—

"was to provide the buildings and construct the foundations ready to receive the machinery and to co-operate in certain other ways in the installation of the same, and the plaintiff in error was to provide and install the machinery, and, upon completion of the same, make a test run of 30 days. For the machinery so installed the defendant in error agreed to pay the sum of $34,200 in the manner following: * * * It was also agreed under the terms of the contract that the machinery should be delivered and installed by the plaintiff in error within 140 days from the date of the contract, provided it was given possession of the building 100 days before the date for completion and was not delayed by any act of the Penn Heat & Power Company, and provided it should not be delayed by reason of strikes, fires, accidents, and other causes beyond its control.

"Under the terms of the contract, the title to the machinery was to remain in the plaintiff in error until the purchase money was paid, and upon failure to pay any installment when due the whole purchase price was to become due at the option of the plaintiff in error, with the right to retake possession of the machinery. * * *

"The machinery to be delivered consisted of a steam engine, a gas compresser, ammonia separator, brine cooler, and ammonia condenser, and their connecting parts. All the parts were manufactured by various subcontractors in several states, upon orders and from designs furnished by the plaintiff in error. These different parts were delivered by the subcontractors at the plant of the Penn Heat & Power Company, and were there set up and connected under the direction of Mr. Woodcock, the engineer of the plaintiff in error. This work was done chiefly by the subcontractors; but the plaintiff in error furnished a few men to assist in this work—four during the period of installation."

There was a good deal of delay about the completion of the contract, so that the machine was not installed for more than a year, and

during this period the work was going on intermittently. Various disputes arose between the parties, and finally the Buffalo Company brought suit, and was denied recovery in the end because it had failed to register; this being the only question raised by the writ of error. As we have already said, we think the judgment was right. The Buffalo Company is not a manufacturing company, so that Mearshon v. Lumber Co. and other decisions of that class do not apply. Its charter was not offered in evidence; but its president testified that its business was engineering and contracting, that it had no factory or workshop where anything was made, and did not manufacture the machinery which it designed, that its capital was invested chiefly in patterns, drawings, and the good will of the business, and that its usual agreements contemplated—as did the agreement in suit—the buying and bringing together of the parts necessary to complete any particular plant. It bought the materials wherever its advantage was served, and assembled them at a given place, putting them together there in order to make an operative machine. It is undoubtedly true, as its counsel argues, that the Buffalo Company did no more than is done by a foreign corporate manufacturer who sells a machine in this state, ships it from the foreign factory, and puts it together here; and it is plausibly contended that, as the foreign manufacturer is protected by the commerce clause of the federal Constitution, the plaintiff company should enjoy the same protection. But the essential difference is that, while the result is the same—the buyer gets a completed machine—the process differs materially. In the one case the corporate power is to manufacture and sell; in the other, to furnish plans and drawings, and to erect. And as the two businesses are distinct, although they may produce the same result, so also the legal consequences are distinct. The manufacturing company is protected by the federal Constitution, because its business is to carry on commerce; the engineering company is not thus protected, because its business is not to carry on commerce, but is of a different character.

Without extending an opinion that is already too long, we hold that the plaintiff was exercising its corporate franchises in Pennsylvania, and was therefore doing business in the state.

The judgment of the Circuit Court is affirmed.

NOTE.—The following is the opinion of Buffington, Circuit Judge, in the court below:

BUFFINGTON, Circuit Judge. This was a suit by the Buffalo Refrigerating Machine Company, a corporation of the state of New Jersey, herein called the "Buffalo Company," against the Penn Heat & Power Company, a corporation of Pennsylvania, herein called the "Penn Company." It was brought to recover the consideration provided in a certain contract between the parties, dated January 4, 1906, for the furnishing and erection of machinery by the Buffalo Company for an ice-making and refrigerator plant of the Penn Company on the premises of the latter. In such suit the Buffalo Company claimed to recover $34,200, being the entire contract price. The Penn Company contended the contract had not been complied with, and claimed damages of $39,495, which would make a certified balance in its favor of $5,295 for damages sustained by reason of the Buffalo Company's nonperformance. The jury found a verdict for plaintiff of $26,670, evidently allowing the Penn Company's offset to the extent of some $7,530. The defendant now moves for a new trial and for judgment non obstante veredicto.

As ground for this latter motion they contend that in fulfilling said contract the Buffalo Company, a foreign company, was doing business in the state of Pennsylvania, without registering under the act of that state of April 22, 1874 (P. L. 108), which provides: "It shall not be lawful for any such corporation to do any business in this commonwealth, until it shall have filed in the office of the Secretary of the Commonwealth, a statement under the seal of said corporation, and signed by the president or secretary thereof, showing the title and object of said corporation, the location of its office or offices, and the name or names of its authorized agent or agents therein; and the certificate of the Secretary of the Commonwealth, under the seal of the commonwealth, of the filing of such statement, shall be preserved for public inspection by each of said agents in each and every of said offices." It is conceded the Buffalo Company did not register. The motion, then, turns on the question whether in fulfilling the contract in question the Buffalo Company was doing business in the state in the sense of that act. At this point we note, so there may be no question hereafter, that in answer to the court's inquiry at the argument of this motion as to what would be the status of the parties in the event judgment was entered for the defendant, it was stated in defendant's brief: "That the title to the various parts making up this ice plant remains in the plaintiff company (see page 17 of the contract), and, upon entering judgment for the defendant, the plaintiff will be entitled to retake the said plant and pay to the defendant the amount of its damages, suffered by reason of the default of the plaintiff."

Turning, then, to the question whether the Buffalo Company in the fulfilling of this contract was doing business in the state of Pennsylvania in the sense of this act, we inquire what the contract in question provided and what the company did in the fulfillment thereof. Much stress has been laid on the question whether this contract was a New York or a Pennsylvania one, but that question is not to our mind specially material, certainly not controlling. If the making of this contract was the only act of doing business in the state, it might be material; but the important question is the significance of acts done in pursuance of the contract which is here sought to be enforced. In point of fact the contract was in the form of a proposition of the Buffalo Company, signed by W. J. Woodcock, its engineer, who had negotiated the same, and was accepted by the Penn Company. The contract provided it was not valid until approved and signed by an executive officer of the Buffalo Company. For that purpose it was mailed to New York, where this was done. By the contract the Buffalo Company agreed "to furnish and erect on your premises at Wilkinsburg" a 50-ton ice plant, which consisted, inter alia, of two large steam engines with a gas compressor plant, etc., the shipping weight of which was some 60 tons; ammonia condenser; ammonia separator; brine cooler; piping connections, etc., the shipping weight being some 27 tons; freezing, thawing, and cold water pumps, air blowers, gauges, shipping weight 2 tons; six freezing tanks, weighing 41 tons, together with fore-coolers, brine tanks, brine piping, and other appliances incident to such a plant in complete working order. The Buffalo Company agreed "to furnish the skilled and common labor, tools, and plans necessary for the erection of our work. It is our intention to furnish the herein specified plant complete, and we will, therefore, with the exception of the parts to be provided by you, herein mentioned, furnish and erect plant in complete working order. Upon completion of our work we will furnish erecting engineer for a term of 30 days to instruct your man in the operation of the machinery, and to make a test run of the same, you furnishing all the necessary supplies and labor. You [the Penn Company] are to provide a suitable room for our employés for use as a storage and work room, and are to permit them free access to every part of your premises where work is to be done." It is agreed that W. J. Woodcock (who made and signed the contract for the Buffalo Company) "will be the constructing engineer and have charge of the work from the start until after the test has been made." The Buffalo Company has no manufacturing plant of its own. It had various parts of the ice plant constructed by other parties and delivered at the Penn Company's premises, where they were erected, coupled, and connected into an operative system by the employés of the Buffalo Company, who spent several months in so doing. The extent of the work done by the Buffalo Company in

erecting and connecting the different parts into a unitary system is possibly as well shown by the facts that the testimony bearing on performance by the Buffalo Company covered some 500 pages of this record.

It seems to us quite clear that it cannot be gainsaid that the Buffalo Company, as a matter of fact and as a matter of law, under the Pennsylvania decisions construing its own statutes, was doing business in the state, and as such should have registered. In support of this conclusion we refer to the Pennsylvania cases of Johnson v. Hulings. 103 Pa. 501, 49 Am. Rep. 131, Thorne v. Travelers' Insurance Co., 80 Pa. 29, 21 Am. Rep. 89, Lasher v. Stimson, 145 Pa. 30, 23 Atl. 552, and Delaware Company v. Passenger Ry. Co., 204 Pa. 25, 53 Atl. 533, cited by the Circuit Court for the Western District of Pennsylvania in Pittsburgh Company v. West Side Belt R. R. Co. (C. C.) 151 Fed. 125, and to the additional case of Fertilizer Co. v. Kelly, 10 Pa. Super. Ct. 565. Great stress is laid by counsel for the plaintiff on the case of De La Vergne Co. v. Kolischer, 214 Pa. 400, 63 Atl. 971, and the Wolff Dryer Co. v. Bigler, 192 Pa. 466, 43 Atl. 1092. In the former case, as the Supreme Court held the De La Vergne Company had registered, it was not necessary to, and the court did not, pass on the question whether it was doing business and registration was necessary. In the other case suit was not to recover for work done under a contract—that is, to enforce the contract—but to recover possession of property, title to which it was alleged had not passed under the contract. Moreover, in that case the Wolff Company had simply contracted to sell the parts of the dryer, but had not undertaken to or done any erection work. Manifestly, neither of the cases are controlling here.

The rule of the defendant will therefore be made absolute, and the clerk will enter judgment non obstante veredicto in favor of the defendant.