## Alcorn Combustion Company v. M. W. Kellogg Company.

*Foreign corporations—Process—Service on Secretary of Commonwealth—Outstanding liabilities of corporation—Act of June 8, 1911.*

1. Service of summons on a foreign corporation registered to do business in Pennsylvania may be made by serving the Secretary of the Commonwealth, regardless of whether it was actually doing business in Pennsylvania at the time of service of the writ, there being no limitation in the Act of June 8, 1911, P. L. 710, of the authority of the Secretary to accept service for such corporation.

2. Section 2 of the Act of 1911, providing that the authority of the Secretary of the Commonwealth to accept service shall continue so long as any liability remains outstanding against the company in this State, refers to circumstances where there is an attempt to revoke the registration and does not prevent service at any time during continuance of the registration, regardless of whether the corporation has any outstanding liabilities.

*Foreign corporations — Doing business — Admissions in tax and bonus reports filed—Contracting business.*

3. A foreign corporation is doing business in Pennsylvania where, in addition to registration as such, it files capital stock and bonus returns in which it admits having a portion of its capital employed here and is engaged in the business of constructing chimneys by its own employees out of materials purchased here.

*Assumpsit* against a foreign corporation. C. P. No. 1, Phila. Co., March T., 1928, No. 8927.

B. O. *Frick* and *Owen J. Roberts,* for plaintiff; F. L. *Clark,* for defendant.

KUN, J., June 29, 1928.—The plaintiff and the defendant are both foreign corporations, registered to do business in Pennsylvania under the Act of June 8, 1911, P. L. 710. The plaintiff's office is in the Bellevue Court Building, Philadelphia. The location of the chief office in Pennsylvania of the defendant is given as, "Representative—Paul B. Wyett & Co., 5 South 18th Street, Philadelphia."

For several years the defendant made returns to the Auditor General; for the year 1926 reporting, "Amount of capital employed in Pennsylvania, $16,058.91;" and for 1927, $14,997.91.

On April 10, 1928, plaintiff issued a summons in *assumpsit* against the defendant, which was duly served on the Secretary of the Commonwealth, constituted by the defendant its true and lawful attorney and authorized agent to accept service of such writ, as appears by the return made by the Sheriff of Dauphin County, deputized for that purpose by the Sheriff of Philadelphia County. Copy of the statement of claim and notice to file affidavit of defense, the original of which had been filed April 12, 1928, was served with the writ. On April 25, 1928, on petition, a rule was allowed on plaintiff to show cause why the service of summons and copy of statement of claim, with rule to file affidavit of defense, should not be set aside and the writ quashed. The principal grounds of defendant's petition are that defendant was not engaged in doing business in Pennsylvania, and that it had no outstanding liabilities to any one in this State. There does not seem to be much difficulty about the position of the plaintiff in bringing an action in this State. Plaintiff duly registered here as a foreign corporation under the Act of 1911, has its principal office in this State, in Philadelphia. Whatever its position may have been were it not duly registered, it must be clear that, having by its registration submitted itself to the process of our courts, it may use them to assert its own claims, though there is no reason why it could not sue in our courts in any event.

"As a general rule, neither citizenship nor residence is requisite to entitle a person to bring suit in Pennsylvania." This, without regard to the origin of the cause of action: Knight *v.* West Jersey R. R. Co., 108 Pa. 250, 255. This principle has never been departed from.

Taking up now the situation of the defendant: If it did no business in Pennsylvania, that is, no intrastate business, it was not obliged to register as a foreign corporation. Such registration was required to allow defendant corporation the privilege of doing intrastate business in this State. One of the conditions of such registration is that the foreign corporation appoint the Secretary of the Commonwealth to act as its attorney and agent upon whom legal process issued in this State may be served. There is no limitation in the Act of 1911 of the authority of the Secretary of the Commonwealth so appointed to accept service of process for such a registered corporation. It is not conditional on such a foreign corporation actually doing business in the State at the time of the issuance of the writ. It seems it would be unreasonable to assume that a foreign corporation so voluntarily registering in this State to do business and authorizing the Secretary of the Commonwealth to accept service of process for it could, notwithstanding, have the right to show in a case that it was not doing business in the State. If the interpretation were otherwise, it would open the door in each case for a collateral inquiry as to that fact which the requirements of the Act of 1911 may reasonably be assumed to have intended to avoid. Added to the fact of registration by the defendant in this State there is the further fact that it filed capital stock and bonus returns with the Auditor General for the years 1926-1927, in which it admitted having employed in this State a portion of its capital. It is difficult to understand the basis of its contention, considering the case from the public records in the State which the defendant has itself made. Defendant registered in Pennsylvania in 1923, and from that year until 1927, inclusive, filed capital stock tax reports and, for 1926 and 1927 at least, filed bonus reports with the Auditor General and paid taxes. The reports for 1927 were sworn to and filed after the issuance of the writ in this case.

In answer to the question in the bonus reports, "State date of commencement of business in Pennsylvania," the defendant stated "since organization."

The court cannot permit the defendant to contradict the public records made by it: De La Vergne Refrigerating Co. v. Kolischer, 214 Pa. 400, 410. Although it seems that, under the circumstances, it was unnecessary to do so, it is very clearly established by depositions taken under the rule that the defendant is in fact doing business in Pennsylvania, and has been for many years. Defendant has been erecting and constructing chimneys in Pennsylvania of cement and concrete purchased in Pennsylvania, and at least 50 per cent. of them from brick manufactured in Pennsylvania for the defendant, shipped and delivered to the defendant in Pennsylvania. These chimneys are erected by defendant's employees, some of whom are hired from Pennsylvania and others elsewhere, all of whom perform their work in Pennsylvania.

This is not a case of an interstate sale with the incident supervision of erection, such as was involved in the case of Williams v. Golden and Crick, 247 Pa. 397, cited on behalf of the defendant. In that case the foreign corporation made special ornamental bronze work according to specifications in New York, which was then shipped to Pennsylvania, where it was put in place by its specialists sent from New York, though with the aid of some local labor. Aside from this essential difference between the cases, the court said in that case (at page 401): "The plaintiff had not established an office or transferred any part of its capital to the State when carrying on its ordinary business here."

In the case before the court there is involved the actual construction in Pennsylvania of buildings from materials, most of which, and in at least 50 per cent. of the chimneys, all of which, are made and purchased in Pennsylvania, where they are delivered by the defendant to its contracting party. The defendant has also, since 1922, been continuously engaged in erecting and constructing in Pennsylvania what are known as cracking plants. The extent of that business is shown by the fact that the contract prices for such plants constructed by the defendant in Pennsylvania since 1924, including the one at Corapolis, now in the course of construction, totaled over $3,378,000. The erection and construction of these plants require from six months to over a year in each instance. The defendant has been at work on the Corapolis plant for over a year. It seems unnecessary to go into further detail concerning the operations of the defendant in this State. It must be clear that it is engaged in intrastate business, in part at least, in Pennsylvania: General Railway Signal Co. v. Virginia, 246 U. S. 500; Kansas City Steel Co. v. Arkansas, 269 U. S. 148. Had the defendant not registered under the Act of 1911, as it did, it would have done business in this State in violation of the law, and would not have been able to recover indebtedness due it under its building contracts.

The defendant has also made the point that the defendant cannot be sued in Pennsylvania if it has no liability outstanding against it in Pennsylvania. The provision in section 2 of the Act of 1911 that "the authority for service of such process shall continue in force so long as any liability remains outstanding against it in the Commonwealth" would seem to have reference to a situation in which a foreign corporation once registered had revoked, or attempted to revoke, its registration and its authorization to the Secretary of the Commonwealth to accept service of process for it: Kelly v. International C. P. Co., 291 Pa. 383.

However that may be, it is clear to the court that the defendant has liabilities outstanding against it in the Commonwealth. The depositions show that under its contract with the Waverly Oil Works Company, a Pennsylvania corporation, defendant is now and has been over a year engaged in the con-

struction and erection of a cracking plant in this State, which plant defendant is under liability to complete in accordance with the contract. Defendant has employed labor in Pennsylvania for a long period of time, so that it may have outstanding liabilities under the Pennsylvania Workmen's Compensation Act of 1915. Under defendant's contract with the Atlantic Refining Company, a Pennsylvania corporation, for the erection and construction of a cracking plant in Pittsburgh, dated Oct. 4, 1927. defendant is still liable on its guarantee there as follows: "Paragraph 10th. Defective Material. The contractor (i. e., The M. W. Kellogg Company) will replace at its own expense for a period of one year from the date of completion and acceptance of work under this contract all material used therein which may prove to be defective, or make such repairs as may be necessary to remedy such defects."

During the last five years defendant has erected from fifteen to twenty chimneys in Pennsylvania, on every one of which defendant has an outstanding liability under the following guarantee contained in the contract for the erection of each chimney: "We guarantee the chimney to withstand a wind velocity of 100 miles per hour, the action of weather and their gases of combustion and a temperature of 800 degrees F. Within a period of five years from date of completion, any defect in the chimney due to these causes or to faulty design, workmanship or materials will be repaired at our expense." For chimneys to be erected by it, defendant has had brick manufactured in Pennsylvania, which brick at the time the writ in this case was issued and served the defendant had an outstanding liability to take and pay for.

Under the contract between plaintiff and defendant, defendant has liability outstanding in Pennsylvania aside from the fact that suit is brought here, for the contract contemplates performance of some of its provisions at least in Pennsylvania. Payments by defendant are to be made in Philadelphia. The contract provides, also, that all communications are to be directed by defendant to plaintiff at the Bellevue Court Building, Philadelphia.

While the court does not consider it material, it may be said that the contract in suit was executed by defendant at New York, sent to plaintiff in Philadelphia and there accepted and executed by plaintiff, as shown by the acknowledgments thereto. It was, therefore, a Pennsylvania contract with some of its provisions to be performed in Pennsylvania, though this is really immaterial: Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U. S. 93, 94.

After stating the general rule of the right of non-residents to sue in our State, the court, in Knight v. West Jersey R. R. Co., supra, added: "A court having jurisdiction of the subject may acquire jurisdiction of the person by lawful service of its process."

The suit in this case is filed by a foreign corporation duly registered in this State, with an established office in Philadelphia County. The suit is on a contract which contains no jurisdictional limitation as to any action thereon. The action is, therefore, transitory. The defendant, also a foreign corporation, has been registered as such in this State for a number of years, during which it has been doing business in the State, and has filed returns with the Auditor General admitting the employment of part of its capital in this State. The sheriff's return shows that the writ issued in the case and a copy of the plaintiff's statement of claim were properly served on the Secretary of the Commonwealth authorized by the defendant to accept such service for and on its behalf.

In all these circumstances the court can find no merit in any of the defendant's contentions. Indeed, the Supreme Court of Oregon, in a very recent

case, Winslow Lumber Co. v. Edward Hines Lumber Co., not yet officially reported, but reference to which may be found in the Corporation Journal of June, 1928, volume VIII, No. 165, at page 208, sustained the service of a writ and jurisdiction of the court where the action was by a Washington corporation against an Illinois corporation on a contract made and performed elsewhere than in Oregon, and neither corporation was licensed to do business in Oregon. Though the business of the defendant in that case was interstate in character, and such that an Oregon license would not be required, nevertheless, a substantial part of its business, the buying and selling of lumber being done in Oregon and having an employee in charge of an office located in Oregon to transact his business, though interstate business, it was amenable to the courts of that state if proper service could be made upon it, the court holding that service on its admitted representative in that state was sufficient.

The rule to set aside the service of the summons and statement of claim and to quash the writ was properly discharged.