# Dunbar Furnace Co., Appellant, *v.* Pennsylvania Railroad Company (No. 1).

*Corporations—Foreign corporations—Doing business within State—Registration—Establishment of agencies—Act of April 22, 1874, P. L. 108.*

1. The State is not concerned about the number of offices, or places of business, a foreign corporation may choose to establish, but when two or more are established, the law requires an agent to be registered for each separate office or place of business. The corporation, and not the State, determines whether in the conduct of its business more than one office, or place of business, is required.

2. In those cases in which it has been held necessary for a foreign corporation to register more than one agent in this State there was in fact separate and apart from the originally designated place of business, a separate business place, or a branch store, or an independent establishment, opened for the general transaction of business in the community where the new place was established.

*Corporations—Foreign corporations—Registration—Act of April 22, 1874, P. L. 108.*

3. A corporation engaged in the iron business having ore mines in Michigan, a principal office in Ohio, an office for the transaction of business in the city of Pittsburgh, and a registered agent in the State of Pennsylvania, has sufficiently complied with the requirement as to registration of the Constitution and the Act of April 22, 1874, although it has not registered an additional agent, or established another place of business in Pennsylvania where it stored its ores in yards leased by it for the purpose, to be smelted by a furnace company under a contract made in Ohio by which the ores were to be sold and delivered to the furnace company from time to time, and paid for by pig iron delivered to the iron company, and stored by it in the yards which it leased.

Argued May 8, 1912. Appeal, No. 48, Jan. T., 1912, by plaintiff, from judgment of C. P. Fayette Co., March T., 1911, No. 339, in case of Dunbar Furnace Co., and

Walter C. Harris, Receiver v. Pennsylvania Railroad Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Replevin for the recovery of goods in possession of the railroad. Before UMBEL, P. J., without a jury.

From the record it appeared that the Dunbar Furnace Company owned and operated an iron furnace at Dunbar.

The Cleveland-Cliffs Iron Company is a foreign corporation with ore mines in Michigan and its financial offices in Pittsburgh.

The iron company furnished from its mines in Michigan to the furnace company at Dunbar, the ore which the latter desired to buy. The furnace company leased to the iron company storage yards at Dunbar. The yards were all marked with signs showing that they were the storage yards of the iron company. Under the contracts the ore was shipped to Wister & Company as agents of the iron company and stored on said yards. As it was needed from time to time it was delivered by Wister & Company to the furnace company and paid for. Payment was sometimes made in pig iron, delivered to the iron company's agents and stored on the yards, and sometimes by notes secured by pig iron delivered and stored in the same manner but only as collateral. The contracts and leases were first made orally in Cleveland and subsequently the written evidences thereof were signed by the iron company in Cleveland and by the furnace company at Dunbar. The iron company had no office at Dunbar. After the receiver was appointed the iron company put watchmen in charge of the yards and iron. Prior to that time the ore and iron had been in the custody and control of Wister & Company and Reginald Palmer as agents of the iron company.

On February 13, 1911, the court of the receiver's appointment directed him to forbid the removal of any iron and in the event of removal to bring replevin. Thereupon the iron company proceeded to remove some of each of three classes of iron, in order that the questions raised by the creditors might be determined.

Twenty-nine tons of No. 2 foundry pig iron were taken from 6,539 tons of iron which had been manufactured by the receiver out of ore on the ore yard at the date of the receivership under a contract and order of court providing that the iron should take the place of the ore as to the rights and titles of all parties.

One hundred and seventy-two tons of No. 1 foundry pig iron were taken from about 25,000 tons of iron which had, prior to the receivership, been delivered by the furnace company to the iron company and stored on one of the yards in payment for ore used.

Thirty tons of Gray Forge iron were taken from 13,311 tons of iron which had been delivered by the furnace company to the iron company as above, save that this iron was delivered not in payment for ore, but as collateral for notes given in payment for the ore as it was delivered. After default in payment of the indebtedness thereby secured, the iron company gave notice and sold pursuant to the terms of the pledge.

The court below held that the plaintiff was entitled to recover as to the 30 tons of Gray Forge iron, and the defendant as to the 172 tons of No. 1 foundry and 29 tons of No. 2 foundry iron. Both parties appealed. The present appeal was taken by the receiver of the furnace company.

*Error assigned* was the decree of the court.

*Abraham M. Beitler* and *A. Leo Weil,* with them *Johnson* and *Rush,* for appellant.—When the ore was dumped at Dunbar, when it came to rest on Pennsyl-

vania soil, it constituted a part and a quite considerable part, of the capital of the iron company embarked in business in Pennsylvania.

It would have been subject to taxation by Pennsylvania statute as the property of the Cleveland-Cliffs Iron Company: Brown v. Houston, 114 U. S. 622 (5 Sup. Ct. Repr. 109) ; American Steel & Wire Co. v. Speed, 192 U. S. 500 (24 Sup. Ct. Repr. 365) ; General Oil Co., v. Crain, 209 U. S. 211 (28 Sup. Ct. Repr. 475).

If a company is doing business in one place in the Commonwealth the registration of an agent at another place of business is not in compliance with the law and a sale made at the place where no agent is registered is made in defiance of the law: Phœnix Silk Mfg. Co. v. Reilly, 187 Pa. 526; De La Vergne Refrigerating Machine Co. v. Kolischer, 214 Pa. 400; National Wall Paper Co.'s App., 15 Pa. Superior Ct. 407.

There can be no question that the delivery of ore at Dunbar Furnace, renting an ore yard upon which to deposit the ore, the property of the iron company, in the possession of its agents, with full dominion and control over it in the iron company, and repeated, in fact, continuous sales thereof to the furnace company, constituted a doing of business at Dunbar Furnace, in Dunbar Township, Fayette County: Milsom Rendering and Fertilizer Co. v. Kelly, 10 Pa. Superior Ct. 565; West Jersey Ice Mfg. Co. v. Armour & Co., 12 Pa. Superior Ct. 443; National Wall Paper Co.'s App., 15 Pa. Superior Ct. 407; Pavilion Co. v. Hamilton, 389 Pa. Superior Ct. 407; Chicago Bldg. & Mfg. Co. v. Myton, 24 Pa. Superior Ct. 16; Columbia Mills Co. v. Trust Co., 15 Pa. D. R. 987; Nonantum Worsted Co., 3 Pa. D. R. 428.

We are not left in doubt upon the question whether the iron company being unregistered, had the power to make any contract at Dunbar Furnace: Lasher v. Stimson, 145 Pa. 30; Thorne v. Ins. Co., 80 Pa. 15; Delaware River Quarry & Construction Co. v. Pass.

Ry. Co., 204 Pa. 22; Chicago Bldg. & Mfg. Co. v. Myton, 24 Pa. Superior Ct. 16; Allegheny Co. v. Allen, 69 N. J. Law 270 (55 Atl. Repr. 724) ; Atherton v. Wilkes-Barre, 3 Kulp 402; Wilkes-Barre Electric Light Co. v. Wilkes-Barre Light, Etc., Co., 4 Kulp 47.

*G. W. Pepper,* with him *W. B. Bodine, Jr., D. M. Herzog* and *Hoyt, Dustin, Kelly, McKeehan & Andrews,* for appellee.—The receiver's claim rests upon a construction of the Act of 1874 which converts that statute into an unconstitutional regulation of interstate commerce: Caldwell v. North Carolina, 187 U. S. 622 (23 Sup. Ct. Repr. 229) ; Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. Repr. 1; Western Union Tel. Co. v. Kansas, 216 U. S. 1 (30 Sup. Ct. Repr. 190) ; International Textbook Co. v. Pigg, 217 U. S. 91 (30 Sup. Ct. Repr. 481) ; Rearick v. Pennsylvania, 203 U. S. 507 (27 Sup. Ct. Repr. 159) ; Louis & Nash. R. R. Co. v. Cook Brewing Co., 223 U. S. 70; Leisy v. Hardin, 135 U. S. 100 (10 Sup. Ct. Repr. 681) ; Norfolk & West. Ry. Co. v. Sims, 191 U. S. 441 (24 Sup. Ct. Repr. 151).

The transaction disclosed by the record did not involve a doing of business in Pennsylvania by the Iron Company within the meaning of the act: Mearshon v. Lumber Co., 187 Pa. 12; Wolff Dryer Co. v. Bigler, 192 Pa. 466; Hovey's Est., 198 Pa. 385; Kilgore v. Smith, 122 Pa. 48; Com. v. Telephone Co., 129 Pa. 217; Darst Co. v. Cohen, 9 Dauphin County 251; Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 284; Bruner v. Kansas, Etc., Plow Co., 168 Fed. Repr. 218; N. J. Steel Tube Co. v. Riehl, 9 Pa. Superior Ct. 220; Wile & Brickner Co. v. Onsel, 1 Pa. D. R. 187.

The registration by the iron company of an office and agent in Pittsburgh prior to the transaction in issue was, in any event, a compliance with the act: De La Vergne Refrigerating & Machine Co. v. Kolischer, 214 Pa. 400.

OPINION BY MR. JUSTICE ELKIN, July 2, 1912:

While the railroad company is named as the defendant in this action of replevin, it simply stands in the position of a stakeholder, not having any interest in the result of the litigation. The real parties are the receiver of the furnace company, on the one side, and the iron company, claiming title to the property in dispute, on the other. The iron company is a foreign corporation, having ore mines in Michigan, a principal office in Ohio, an office for the transaction of business in the City of Pittsburgh, and a registered agent in the State of Pennsylvania. It is found as a fact, and the evidence shows it to be a fact, that the Pittsburgh office was established and the authorized agent registered long before the execution of the contracts involved in the present controversy. If the establishing of an office in Pittsburgh and the registration of an agent in the office of the secretary of the commonwealth are sufficient to meet the requirements of the constitution and the Act of 1874, there is no foundation upon which to base the contentions of appellant. The sole and only ground upon which the receiver undertakes to justify his assertion of title to the property in dispute is that the iron company, a foreign corporation, was not properly registered in Pennsylvania, and that by reason of failure to comply with this requirement of the constitution and the statute, all business transacted in our State was unlawful, and all contracts made here, illegal and void. If there had been no registration of an agent, or if an additional agent had not been registered for each separate and independent place of business, the position of appellant would be well taken, if the furnace company had title to the iron; but in the present case there was a properly registered agent and a designated place of business in the state. Under this statement of facts the only question that can possibly arise is whether it was absolutely necessary, in order to comply with the law, to register an additional agent

and establish another place of business at Dunbar where the ore was smelted and the pig iron produced. The Constitution provides that no foreign corporation shall do any business in this State "without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served." The primary purpose of the constitutional requirement is to bring foreign corporations doing business in our State within the reach of legal process: Construction Company v. Passenger Railway Company, 204 Pa. 22. In the case at bar this primary purpose was served by registering an agent and establishing a place of business. Neither the Constitution, nor the Act of 1874, requires more than one registered agent and one office or place of business, unless the foreign corporation has established two or more offices or places of business in the State, in which event there must be a registered agent in each office or place of business so established: De La Vergne Refrigerating Machine Co. v. Kolischer, 214 Pa. 400. The State is not concerned about the number of offices, or places of business, a foreign corporation may choose to establish, but when two or more are established, the law requires an agent to be registered for each separate office or place of business. The corporation, and not the State, determines whether in the conduct of its business more than one office, or place of business, is required. In the present case the iron company, in view of the business transacted by it in Pennsylvania, only deemed it necessary to establish one office and register one agent, and it did so. Certainly after it had established an office and registered an agent, it had the prima facie right to do business in Pennsylvania. Up to this point it had complied with the requirements of the law. Of course, if it had established another place of business, it would have been necessary to register another agent, but it did not do so, and unless it be now held that the law required it to establish an office or place of business at

Dunbar this appeal is without any merit at all. After a careful examination of all our cases we have reached the conclusion that nothing decided in any one of them requires us to hold as a matter of law that it was the duty of the iron company to establish a separate and independent office, or place of business, and to register an additional agent at Dunbar. To so hold would practically mean that every foreign corporation doing business in Pennsylvania would be required to establish an office and register an agent in each county of the state in which it transacted any business. Neither the Constitution, nor the Act of 1874, nor the trend of judicial decisions, contemplates the necessity for such a harsh and confiscatory rule simply to bring a foreign corporation within the reach of legal process here. In those cases in which it was held to be necessary to register another agent there was in fact, separate and apart from the originally designated place of business, a separate business place, or a branch store, or an independent establishment, opened for the general transaction of business in the community where the new place was established. This was true in the case strongly relied on by appellant here: Phœnix Silk Mfg. Company v. Reilly, 187 Pa. 526. In the case at bar the iron company was not engaged in the transaction of business with the general public at Dunbar and there was no necessity, legal or commercial, to establish a place of business there in order to have its ores smelted by the furnace company. The contracts relating to the smelting of the ore were executed by the officers of the iron company in another state, and the validity of their acts in this respect have not been, and could not be, successfully challenged. Contracts for the sale of the pig iron in the natural course of business would be made at the principal office of the company located in another state, or could just as well be made at the office established in Pittsburgh as at Dunbar. There was no business necessity for a separate office, or place

of business, at Dunbar, and we can see no valid reason why the law should impose the duty of establishing a separate office there upon a foreign corporation which in the transaction of its business was not required, when it already had established a business office and registered an agent in the State. In morals, in right, and according to our view in law, the pig iron in dispute here is the property of the iron company, and nothing short of a violation of imperative rules of law would justify an act of confiscation in the interest of those, not the owners, as against the real owners. There is no such imperative necessity in the present case and therefore no sufficient reason why this thing should be done. Appellant testified that prior to the receivership the title and ownership of the iron company to the ore and iron in dispute here had never been questioned by the furnace company. In other words, the furnace company did not then claim title to this property, but did fully recognize the ownership of the iron company in the same. If the furnace company did not have title to the property before the receivership, it is difficult to understand how the receiver acquired title afterward, nothing having occurred to interfere · with the rights of the parties in the meantime. In an action of replevin the plaintiff must show title, or right of possession, and while the decision of this point is not necessary to the determination of the rights of the parties involved in the present proceeding, it is very doubtful, to say the least, whether appellant met this burden, even if there had not been a proper registration. Without further discussion, it remains to be said, that the registration of an authorized agent and the establishing of an office in the State were sufficient under the facts of the present case to meet the requirements of the law in this respect, and the title to the property in dispute being in the iron company, it is entitled to possession of the same. The learned court below erred in holding that the iron company had not

been properly registered as a foreign corporation in Pennsylvania, but inasmuch as the title to the iron in dispute in this appeal was held to be in the iron company on other grounds, the conclusion reached must be sustained.

Judgment affirmed.

